## THE STATE v. GUINN, Appellant.

### Division Two, May 19, 1903.

1. **Criminal Law:** INSTRUCTIONS: FOR BOTH SIDES. It is of no consequence at whose request an instruction may be given in a criminal case, so long as it is authorized by the law and the facts of the case. So that it is not error to refuse a correct instruction asked by defendant on the subject of alibi, if the court has given one on behalf of the State in all respects correct and sufficiently full.

2. ———: COMMENT ON DEFENDANT'S FAILURE TO TESTIFY. It is prejudicial error for the prosecuting attorney to comment without rebuke, after the attention of the court has been called to the matter, upon what defendant and his wife might have testified to in regard to certain facts connected with his prosecution, but did not testify to.

Appeal from Nodaway Circuit Court.—*Hon. Gallatin Craig*, Judge.

REVERSED AND REMANDED.

*L. C. Cook, B. R. Martin* and *J. S. Shinabargar* for appellant.

No attorney in the trial of any criminal case has the right to refer in any manner to the failure of a defendant or his wife to testify upon any proposition. This the prosecuting attorney did, and after objection was made and defendant's counsel appealed to the court, the prosecuting attorney further persisted in the violation of the law and of the rights and privileges of defendant, by discussing to the jury the reason why defendant's wife did not testify by using the words, "this woman, whose virtue and sorrow has been so highly extolled, knew all about these transactions—the wife—and she never attempted to explain to the jury where the policy was—whether it was in the bank or elsewhere." Such language and conduct on the part of the prosecuting attorney is of itself ample and sufficient ground for the reversal of this case, and is wholly in violation of the rights and privileges of defendant and his wife as prescribed by Revised Statutes 1899, section 2638, and many decisions of this court. State v. Brownfield, 15 Mo. App. 593; State v. Graves, 95 Mo. 517.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1) Prior to the trial the prosecuting attorney notified defendant to produce the policy of insurance between defendant and the Farmers' Fire and Lightning Insurance Company. At the trial, it was admitted that such notice had been served on defendant and that no response had been made thereto. Thereupon the court permitted secondary evidence of the contents of said policy. This evidence was objected

to by counsel for defendant on the ground that it was not the best evidence. An exception was duly saved. The evidence showed that the policy was last in the possession of defendant and that he had been notified to produce it, and had failed and refused to do so. This was sufficient reason for the action of the court in admitting secondary evidence of the contents of the policy. State v. Black, 12 Mo. App. 531; Knight v. State, 58 Neb. 225; McGinnis v. State, 24 Ind. 500; Underhill on Crim. Ev., p. 52. (2) During the argument, the prosecuting attorney interjected the inquiry as to why defendant did not come on the stand and tell the jury where the insurance policy was at the time of the fire. This observation was objected to by the defendant. It seems that the court did not at first understand the statement of the prosecutor and immediately on ascertaining what it was, stated that the prosecuting attorney had no right to refer to that. Defendant, therefore, got all he asked, and there is nothing for this court to consider. "If he thought that a reprimand was deserved by counsel for using objectionable language, he should have asked for it. And, then, if refused, preserved the point in the proper manner." State v. Wright, 134 Mo. 419; State v. Gartrell, 171 Mo. 489.

BURGESS, J.—On June 27, 1902, defendant was convicted in the circuit court of Nodaway county, under an indictment charging him with arson in the third degree, and his punishment fixed at five years' imprisonment in the penitentiary. He appeals.

The facts are about as follows:

"On the 21st day of June, 1898, the grand jury of Nodaway county returned a true bill of indictment against this defendant for arson in the third degree. Prior thereto a preliminary examination was had, the defendant was bound over, gave bond in the sum of $750 for his appearance on the first day of the

June term, 1898, of the Nodaway Circuit Court, and therein bound himself not to depart without leave. But he did not perform the condition of this obligation and his bond was forfeited and he left the State and took up his abode in Iowa. He was not arrested again until the 6th day of May, 1902. A trial had on the 27th day of June, 1902, resulted in his conviction and sentence to the penitentiary for a term of five years.

"The defendant was twenty-seven years old at the time of the trial, married, and had three children. On the 11th day of August, 1897, he made application to The Farmer's Mutual Fire and Lightning Insurance Company, of Nodaway county, Missouri, for a contract of insurance on his property. The contract of insurance covered, among other property, his dwelling and household furniture. The dwelling was insured against loss and damage by fire, to the amount of two hundred dollars, and the furniture in the sum of one hundred and fifty dollars. He was assessed, and paid one assessment on this policy in November, 1897.

"It appears that on the 14th day of February, 1898, the defendant, in company with his family, left his home and went to the home of his father-in-law, a distance of about eight miles. His residence was consumed by fire at about the hour of ten o'clock p. m. of that day. The evidence on behalf of the State shows that after the defendant had notified the company of his loss, and had filed his affidavit in proof thereof, an examination was made by the company and it was discovered that a large portion of the household goods, mentioned in the affidavit of loss of the defendant, were not, in fact, destroyed. A search warrant was procured, as was also a warrant for the arrest of defendant. The defendant was met in the road by the constable, advised of the fact that the constable had a search warrant, and also a warrant for his arrest. The defendant told the constable that he could search

all he damn pleased, and refused to go to the former site of the residence with the constable.

"It was further shown by the State that after the warrant was read to the defendant, he resisted the attempt of the officer to get in the buggy beside him and attempted to drive away. He was not successful in this, but was arrested and taken back to the scene of the fire. He was placed in the custody of the young man who was deputized as constable, and the constable and his driver began to execute the search warrant. The search disclosed that in the barn belonging to the defendant, which was situate in close proximity to the residence, there were two feather beds and bedclothes, a trunk, a couple of rocking chairs, a sewing machine, a bureau and some boxes containing books, albums, pictures, etc., as well as such other furniture and clothing as ordinarily belong to the usual home. The constable testified that the feather beds were placed in a barrel, and that the barrels had strings tied across them, and afterwards a quilt was placed over the top of the barrel and attached by strings; that the goods were carefully and neatly packed. It was also shown that these goods were concealed from view by being covered by a large amount of hay or millet. The investigation of the constable further disclosed that there were two trunks in a cave containing such wearing apparel as is ordinarily used by a family, and that the cave also contained a tub of dishes, knives and forks and spoons, a baby carriage and a baby's high chair. The defendant had sworn in his proof of loss that this property was destroyed by fire. The defendant at first refused to give the constable the key to unlock the door of the cave; but on being informed it would be forced open if the key was not produced, he then produced the key.

"After his preliminary examination had been held he told the sheriff that he had set fire to his house and had stored his clothing and furniture in the barn and

that he knew of no way out of his extremity except to give bond and then leave the country. It is also in evidence that he made a similar confession to the deputy constable, and that while being held by the deputy constable at the time that the constable was executing the search warrant, he offered to give the deputy constable ten dollars if he would permit him to escape.

"Counsel for the State served a notice on the defendant, requesting him to produce the insurance policy; but he declined at the time to do so; but before closing the case, he introduced the same in evidence.

"The evidence on the defendant's part was an alibi. He testified, as did also his wife, that he left his home at about the hour of one o'clock p. m. of the day his house burned and went to the home of his father-in-law, about eight miles distant, where he remained during all the night. And there were other witnesses who swore to a like effect. He denied having made any incriminatory admissions."

It is said for defendant that the court erred in refusing an instruction asked by defendant to the effect, "that it is the duty of the State to show the presence of the defendant at the time and place of the alleged commission of the crime, and, if you have a reasonable doubt in your mind of the presence of the defendant at the time when and the place where the house of the defendant was set on fire, if you believe it was so fired, you will find the defendant not guilty," but the court gave a similar instruction at the request of the State, which was equally as full and fair to defendant as the one asked by him, and this was all that was necessary. It is of no consequence at whose request an instruction may be given, so that it is authorized by the facts and the law of the case. This contention we think untenable.

Defendant complains of the refusal of the court to give an instruction at his request as follows:

"The court instructs the jury that circumstantial

evidence should always be cautiously considered, and to warrant a conviction, it must be such as to produce in the minds of the jury that certainty of guilt that a discreet man would be willing to act upon in his own grave and important concerns. Such evidence is not sufficient for conviction, unless it excludes every reasonable theory consistent with the defendant's innocence. If the jury are not satisfied with the guilt of the defendant, beyond a reasonable doubt, the defendant ought to be acquitted, although the unfavorable circumstances, if any, have not been disproven or explained."

But there was no error in refusing this instruction, because those given covered every feature of the case, and were very fair to the defendant.

Defendant also complains of remarks made by Mr. Dawson, the prosecuting attorney, in his closing address to the jury, to which defendant objected and excepted. Defendant and his wife and Cora Grimes testified in his behalf, and Mr. Dawson the prosecuting attorney said:

"Why didn't he [meaning the defendant] come on the stand and tell the jury where that policy was?

"Mr. Cook, counsel for defendant: I object to the prosecuting attorney referring to what the defendant didn't testify to.

"By the Court: I didn't understand.

"Mr. Cook: He positively appeals to the jury why the defendant didn't say so and so.

"Mr. Dawson: Mr. Cook asked this jury why we didn't do that. I am telling them why.

"By the Court: I didn't understand—go on and let me see what it is.

"Mr. Cook, counsel for defendant: I save my exception.

"By the Court: I want to know what it is.

"Mr. Dawson, counsel for plaintiff: If his wife knew all these circumstances, why didn't she tell you

where this insurance policy was at the time of the fire. She didn't do it.

"By the Court: If it is intended as to the defendant—I didn't hear the remark—as to his explanation, you have no right to refer to that.

"Mr. Dawson, counsel for plaintiff: I did it because Mr. Cook referred to the jury why we didn't ask these witnesses where the policy was.

"By the Court: Don't refer to the defendant.

"Mr. Dawson, counsel for the plaintiff: I will say this: This woman whose virtue and sorrow has been so highly extolled knew all about these transactions—the wife—and she never attempted to explain to the jury where the policy was—whether it was in the bank or elsewhere."

Section 2638, Revised Statutes 1899, provides, that "if the accused shall not avail himself or herself of his or her right to testify, or of the testimony of the wife or husband, on the trial in the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place."

In passing upon a similar question which arose under this statute in the case of the State v. Graves, 95 Mo. 510, it was held error to allow the prosecuting attorney, over the objections of the defendant and without rebuke from the court, to comment upon what the defendant might have testified about, but did not, when on the witness stand. The court said:

"Under these statutory provisions it is clear that a defendant who offers himself as a witness can not be cross-examined except as to such matters as may be referred to by him in his examination in chief, and it would seem to follow necessarily from this, that the comments on his evidence should be confined to such matters as he testified about in his examination in chief

and cross-examination. If a cross-examination is limited only to such matters as the witness testified about in chief, upon what principle can the right be maintained to comment in argument upon matters about which a cross-examination under the statute would not have been allowed? The statute having conferred the right upon such a defendant when he takes the stand to testify only in regard to such matters as he may choose, this right of choice would in effect be taken away by a ruling which would justify comments to be made, and unfavorable inferences to be drawn from what he might have testified about, but about which he did not testify. Under this statute the defendant has two options, the first of which is that he may elect either to go on the stand or not, as a witness; and second, when he elects to go on the stand he may testify only to such matters as he may choose. It is clear that, under the statute, if he elects not to go on the stand, the fact that he did not testify at all could 'neither be construed' to affect his innocence or guilt, nor be referred to by any attorney in the case. If the statute forbids comment upon what he might have sworn to when he elects not to go on the stand, why does it not in its essence and spirit, when he elects to testify, also forbid comment upon what he might have sworn to while on the stand and which he elected, as under the statute he had the right to do, not to testify about? In case of State v. Anderson, 89 Mo. 330, it is said *in arguendo,* 'that under the statute no comment or allusion can be made as to the failure of a defendant to testify in his own behalf, yet this rule extends no further than the terms of the statute, so that when a defendant in a criminal cause takes the stand, and fails, as in this case, to testify to and explain damaging facts peculiarly within his own knowledge, the inferences from such failure are as adverse as though he was a witness in a civil case.' "

That case was followed with approval in State v. Elmer, 115ʹMo. 401; State v. Fairlamb, 121 Mo. 137.

The observations of the prosecuting attorney under consideration were manifestly improper and should not have been permitted. That the court did not hear them, and, promptly rebuke the prosecuting attorney for their utterance, was no fault of the defendant and none the less prejudicial. He called the court's attention to them, and protested against them at the time.

For the error committed in allowing the prosecuting attorney to comment without rebuke (after the attention of the court had been called to it) as to what defendant and his wife might have testified to with respect to where the policy of insurance might have been found, but did not testify with respect thereto, the judgment will be reversed and the cause remanded.

All concur.