## THE STATE v. MOSES MILLER, Appellant.

### Division Two, May 23, 1911.

1. **EVIDENCE: Conduct After Crime Committed.** The conduct and admissions of the accused, after the commission of the crime, tending to prove the charge, are always competent. So that testimony of the mayor that in June, in company with policemen, he went to the place in which gambling had been carried on in March or April preceding, for the purpose of making a raid; that they went into the saloon over which the gambling room was located, and demanded to go upstairs; that the defendant, who was in the saloon at the time, got the keys at the bar and took him upstairs and into the gambling room; that they found the room furnished and fitted up with gambling tables and devices, but with no person therein; that there was ice water in a tank, and the spittoons had the appearance of having been lately used; that he said to defendant, "You have been gambling up here," whereupon defendant laughed, but made no reply, is competent, in the trial of defendant of the offense of setting up and keeping a gaming table and gambing device—at least as a circumstance for the consideration of the jury.

2. **GAMBLING DEVICE: Proof.** It is not sufficient to prove that a gaming table and gambling device was set up and kept; it must also be shown that it was set up, kept or maintained by defendant. Proof of the *corpus delicti* is not sufficient; it is also essential to prove defendant's agency in the commission of the offense. So that though there is positive, direct and uncontradicted evidence that a gambling room and gaming tables and gambling devices therein were maintained, yet if it is not shown that the defendant exercised authority in the room, or gave any directions, or was in some manner connected with the saloon, or was generally found in the saloon or gambling room, or that there was some circumstance in evidence tending to show his connection with the gambling room or tables, except that he was there at one time when crap games were being played and brought money to a man who needed it in a game, and who seemed to be in charge of the tables, there is no direct proof that he set up, kept or maintained the gaming table, and his convicion cannot stand.

3. ————: ————: **Suspicion.** Where the testimony is of such unsubstantial character that it merely raises a strong suspicion of guilt, the Supreme Court will reverse the judgment and grant a new trial.

4. **TESTIMONY:** Refreshing Memory: Examination of Memoran-
dum. If the prosecuting attorney is permitted to refresh the
memory of the State's witnesses by calling their attention
to written memoranda, for instance, the written notes of their
testimony before the grand jury, then the defendant should
be permitted to inspect such memoranda and to use the same
in the cross-examination of the witnesses. Nor should the
defendant be denied the right to cross-examine the witness
as to whether he testified to certain facts from what he saw
in the memorandum or from his memory of the facts as they
occurred.

5. **REMARKS OF COUNSEL:** Commenting on Defendant's Fail-
ure to Testify: Gambling Device. Where defendant, testifying
in his own behalf, upon a trial of the offense of setting up
and keeping a gaming table and gambling device, was not
called upon to explain to the jury what he was doing in the
gambling room, nor to say whether or not he had any visible
means of support, the prosecuting attorney, in his argument
to the jury, should not comment on defendant's failure to tes-
tify as to such matters.

6. **COMPETENCY OF TESTIMONY:** Preliminary Inquiry. The
defendant is not entitled to ask preliminary questions as to
the competency of testimony of a State's witness. That right
only extends to the competency of the witness to testify.

Appeal from Jasper Circuit Court.—*Hon. Henry L.
Bright,* Judge.

REVERSED AND REMANDED.

*R. M. Sheppard* and *Clay & Davis* for Appellant.

(1) There was no competent evidence in this case
sufficient to support a verdict of guilty. One accused
of a crime should not be convicted on a mere suspicion,
or even a strong probability, of guilt, but the evidence
should be clear and convincing, fully satisfying the
minds and consciences of the jury; unless it is so, the
accused should be acquitted. The presumption of in-
nocence is not overcome by strong suspicion or con-
jecture; the law requires proof beyond a reasonable
doubt. State v. Crabtree, 170 Mo. 642; State v.
Lawrence, 178 Mo. 350; State v. Johnson, 209 Mo. 346.
Where the evidence is circumstantial the facts and

circumstances must, in order to warrant a conviction, be established beyond a reasonable doubt, and when so established must point so strongly to the guilt of the defendant as to exclude any other reasonable hypothesis. State v. Hunsack, 189 Mo. 295; State v. Moorey, 196 Mo. 43; State v. Francis, 199 Mo. 680. Where circumstances are relied upon, they must be such as to establish the defendant's guilt beyond a reasonable doubt by facts and circumstances which are consistent with each other and with the defendant's guilt, and inconsistent with any reasonable theory of his innocence. Therefore, a suspicion of guilt, or even a strong probability of guilt, is not sufficient to authorize a conviction. State v. Faulkner, 175 Mo. 546; State v. Scott, 177 Mo. 665; State v. Crabtree, 170 Mo. 642. (2) The court committed error in permitting the prosecuting attorney to present to the witness Joseph the instrument which purported to be the evidence of the witness before the grand jury for the purpose of refreshing the witness's memory and in refusing to let counsel for defendant cross-examine the witness as to whether he had any independent recollection as to what he saw defendant do, or whether his evidence was based entirely upon the instrument from which he refreshed his memory, and also in refusing to permit counsel for defendant to see the instrument from which witness was attempting to refresh his memory. Wigmore on Evidence, secs. 762, 764; Putnam v. United States, 162 U. S. 687; Maxwell v. Wilkinson, 113 U. S. 657; Walker v. State, 117 Ala. 42.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) If there was evidence to take the case to the jury, then this court will not interfere, as the weight of the evidence was for the consideration of the jury. It is only in case of the absence of substantial evidence to sustain the verdict that this court will interfere, and

in the case at bar there was substantial evidence of appellant's guilt. The jury so found and the trial court approved the verdict. State v. Mathews, 202 Mo. 148; State v. Tetrick, 199 Mo. 104; State v. McKenzie, 177 Mo. 717. (2) The evidence of Humes was competent for the purpose of showing appellant's connection with the room. The State was entitled to show any connection the appellant had with this room. State v. Marcks, 140 Mo. 656; State v. Goddard, 162 Mo. 198. (3) The prosecution undoubtedly had the right to refresh this witness's memory from the memoranda of his evidence taken before the grand jury, as the witness seemed to have failed in memory. 1 Greenleaf on Ev., section 436; Sandwell v. Sandwell, Comb. 445, Holt, 295; Nichol v. Webb, 8 Wheat, 326; Wood v. Cooper, 1 Car. & K. 645; Billingslea v. State, 85 Ala. 323. It is not the memorandum that is competent, it is the memorandum that may be used to refresh the witness's memory. Putnam v. United States, 162 U. S. 697; Hickory v. United States, 151 U. S. 303; Morrison v. Chapin, 97 Mass. 72; Ins. Co. v. Evans, 15 Md. 54.

KENNISH, P. J.—At the April term, 1910, of the circuit court of Jasper county, appellant was convicted of the offense of setting up and keeping a gaming table and gambling device, commonly called a crap table, sentenced to imprisonment in the penitentiary for a term of two years, and appealed to this court. The prosecution was based on section 4750, Revised Statutes 1909. The facts are fully stated in the opinion.

I. Appellant first assigns as error the insufficiency of the evidence to sustain the verdict and the refusal of the court to give an instruction in the nature of a demurrer to the evidence. This contention calls for a review of the testimony upon which the jury found the defendant guilty.

That gambling was carried on openly and in flagrant violation of the law, at the time and place charged in the indictment and mentioned in the evidence, was clearly shown and, aside from the criminal agency of the defendant, every essential element of the offense charged was proven by undisputed evidence. The question that now demands our serious consideration is this: Was the testimony sufficient to warrant the jury in finding that the defendant set up and kept the gaming table, upon which the gambling was conducted as testified to by the witnesses?

It is provided by section 4761, Revised Statutes 1909, that: "Every person appearing or acting as master or mistress, or having the care, use or management, for the time, of any prohibited gaming table, bank or device, shall be deemed a keeper thereof; and every person who shall appear or act as master or mistress, or having the care, use or management of any house or building in which any gaming table, bank or device is set up or kept, or of any gaming house, brothel or bawdy house, shall be deemed the keeper thereof."

Did the testimony for the State bring the defendant within the charge in the indictment of setting up and keeping a gaming table, as defined in the statute upon which the prosecution was based, construed in connection with the foregoing section?

Four witnesses only testified on behalf of the State, namely, David Joseph, Frank Holburt, Guy Humes and W. C. Porter. Porter was a deputy sheriff and his testimony was limited to proof of the inability of the officers to obtain service on another witness for the State whose name was indorsed on the indictment. So the determination of the question in hand depends on the testimony of the three witnesses first named. Witness Humes was mayor of the city of Joplin and his testimony did not relate directly to the time referred to in the indictment and by the other witnesses. He testified that about the first of June,

1909, in company with members of the police force, he went to the place in which gambling had been carried on in March or April preceding, as testified to by Joseph and Holburt, for the purpose of making a raid; that they went into the saloon over which the gambling room was located, and demanded to go up stairs; that the defendant, who was in the saloon at the time, got the keys at the bar and took the mayor up stairs and into the gambling room; that they found the room furnished and fitted up with gambling tables and devices, but with no person therein. There was ice water in the water tank, and the spittoons had the appearance of having been lately used. The mayor said to the defendant, "You have been gambling up here," whereupon the latter laughed but made no reply.

This testimony was objected to by the defendant and its admission is now assigned as error. We think it was properly admitted upon the principle that the conduct and admissions of the accused, after the commission of the crime and tending to prove the charge, are always competent. It was at least a circumstance that was proper for the consideration of the jury. But when that is said it must be admitted that the testimony of this witness has very little probative force as tending to prove that the defendant, two months before, set up and kept a gaming table as charged in the indictment.

The testimony of the witness Holburt very satisfactorily proved every element of the offense except that it in no manner connected the defendant with the setting up or keeping of the crap table on which the game was being played. He saw the defendant in the room, but did not see him taking part in the management of the table or acting differently from others who were in the room. Therefore, so far as it was necessary to connect the defendant with the setting up and keeping of the gaming table that was shown to

have been operated, the case stands practically on the testimony of the witness Joseph.

Leaving out of consideration the fact of the hostility of this witness to the State and the discredit unavoidably cast upon his character as a witness, we shall examine next his testimony upon the point under consideration. Testifying as to what occurred in the gambling room at the time of the offense charged, he was asked by the prosecuting attorney, "Was the defendant there or was he not there?" The witness answered, "I don't remember." Several times the same question, in varying language, was propounded to the witness and each time the answer was that he did not remember. After the witness had answered, "I say I can't remember it," the prosecuting attorney stated: "We are entitled to that answer one way or the other and I insist on the witness answering it. This 'I don't remember' has been carried too far in this case." The witness was then shown the written notes of his testimony before the grand jury in June or July after the alleged offense and asked to examine the same and refresh his memory therefrom. After making the examination he was asked if he saw the defendant in the gambling room at the time mentioned. He answered "According to that statement I did," and being asked the same question again said, "According to that statement I did." The prosecuting attorney then said, "I insist the witness answer the question," and the witness answered, "Yes, sir." Joseph further testified that when he saw the defendant the latter was in the room walking around, and that part of the time he was around where the others were shooting craps; that a man named Billy was runing the crap table, and that no one else was assisting him, but that defendant brought money to Billy once when the latter needed it in the game.

The cross-examination and refreshing of the memory of the State's witness, as thus conducted by the

prosecuting attorney, was vigorously objected to by the defendant and exceptions were saved to the adverse rulings of the court. On cross-examination by the defendant the witness Joseph answered that the man named Billy exercised control over and had the management of the crap table, and that he could not have remembered that the defendant took the money to the table if he had not seen the notes of his testimony before the grand jury. 'It was not shown that the defendant exercised any authority in the room, or gave any directions, or was in any manner connected with the saloon below, or even that he was generally found in the saloon or gambling room, nor were there any circumstances in evidence tending to show his connection with the gambling room or tables therein, except as above detailed.

From this review it appears that there was direct, positive and uncontradicted evidence of the *corpus delicti* of the offense—the setting up and keeping of the crap table at the time and place charged—but there was no direct evidence that the defendant set up, kept or maintained said table.

It was as essential to prove the defendant's criminal agency in the commission of the offense as it was to prove the *corpus delicti,* i. e., that the crime was in fact committed. [State v. Crabtree, 170 Mo. 642; State v. Francis, 199 Mo. 671.] The only circumstance directly tending to prove the defendant's participation in the commission of the offense was the fact that he carried some money from one table to another when it was needed at the latter table and this circumstance was not inconsistent with the defendant's innocence. The case as it thus stands before us is this: That because the defendant was in the gambling room, walking around with fifteen or twenty others, and once, upon request, carried money from one table to another, each of which tables was under the charge of and being operated by a person other than the defendant, and

because two months later, upon request, he obtained the keys to the gambling room from another and unlocked the door and admitted the mayor of the city to the gambling room where no person was then present, the defendant was found guilty of the felony of having set up and kept a gambling table as charged in the indictment.

The jury, observing the behavior of the two witnesses for the State, who participated in the gambling at the time charged in the indictment, and observing their transparent efforts to conceal rather than to tell the truth, observing their resort to such subterfuges and evasions as to cause them to stand utterly discredited and unworthy of belief, even in the eyes of the party who placed them upon the witness stand, doubtless were influenced to some extent by such conduct as well as by the tangible evidence of guilt actually before them. But however much such conduct at the trial may arouse and confirm suspicions of guilt, it cannot be allowed to supply the place of testimony that directly tends to establish the guilt of the accused or testimony of facts and circumstances from which such guilt may be satisfactorily inferred. No principle of appellate procedure is better settled or more frequently invoked than that if there is substantial evidence of defendant's guilt, the verdict will not be disturbed. On the other hand, where the testimony is of such unsubstantial character and tendency that it merely raises a strong suspicion of guilt, this court has not hesitated to reverse a judgment and grant a new trial for that reason alone. [State v. Crabtree, 170 Mo. 642; State v. Johnson, 209 Mo. 346; State v. Francis, 199 Mo. 671.]

After a thorough examination and re-examination of the record in this case we have become satisfied that the evidence is insufficient to support the verdict, and we so hold.

II. As the case will be retried it is suggested that if the prosecuting attorney again be permitted to refresh the memory of the State's witnesses by calling their attention to a written memorandum, the defendant should be allowed to inspect such memorandum and to use the same in the cross-examination of such witnesses. [State v. Matthews, 88 Mo. 121; 1 Wigmore on Evidence, sec. 762.]

Neither should the defendant be denied the right to cross-examine as to whether he testified to certain facts from what he saw in the memorandum or from his memory of the facts as they occurred.

III. The defendant, testifying as a witness in his own behalf, was not called upon to explain to the jury what he was doing in the gambling room, nor to say whether or not he had any visible means of support, and the prosecuting attorney should not have commented, in his argument to the jury, on the defendant's failure to testify upon such matters. [State v. Graves, 95 Mo. 510; State v. Guinn, 174 Mo. 680.]

IV. The court did not err in refusing to allow the defendant to ask Guy Humes, a witness for the State, preliminary questions as to matters about which he was to testify. The defendant had the right to object to any question when it was asked by the prosecuting attorney and in that manner could amply protect his rights against the admission of incompetent testimony. The practice of permitting the opposite party to ask preliminary questions is well recognized where the purpose is to determine the competency of the witness, but, with a few exceptions, not to determine in advance the competency of the testimony. [1 Wigmore on Evidence, sec. 485.]

V. Complaint is made of the action of the court in refusing an instruction asked by the defendant, but as this instruction was based on a state of facts in evi-

dence that may not arise on a second trial, we deem it unnecessary to pass upon this complaint.

For the reasons stated the judgment is reversed and the cause remanded.

*Ferriss, J.,* and *Brown, J.,* concur.