## THE STATE v. OWEN PATTON, Appellant.

### Division Two, February 17, 1914.

1. **REFRESHING MEMORY OF WITNESS: Data Not Seen by Adverse Party: Not Ground of Motion for New Trial.** A defendant prosecuted for a crime is entitled to see data used by the State in refreshing the memory of a witness, and it was error for the court to refuse to allow defendant and his counsel to examine that part of the transcript of the testimony of witnesses before the grand jury which the prosecuting attorney used at the trial for the purpose of refreshing their memory; but unless the error was urged in the motion for a new trial it cannot be considered on appeal.

2. **———: Reading from Grand Jury Notes.** The Constitution provides that an accused person upon his trial has the right to be confronted with his accusers, and that prevents the prosecuting attorney at the trial from reading, *verbatim* and without any identification of the paper, from the transcript of the *ex parte* testimony of a witness before the grand jury and asking him if he did not testify to those things. If he finds the witness hostile or evasive or of hazy memory, he may use the testimony taken before the grand jury to refresh the witness's memory, not for the purpose of identifying the paper as being a true transcript of his testimony and then offering it to the jury or reading it to them, but for the purpose of exhibiting it to him to permit him, if he wish, to

examine his testimony, his signature and other insignia of verity and having been so examined and identified as a true copy of the testimony, for the purpose of asking him again the question upon which he has deviated or was doubtful. But the copy cannot be used to contradict the witness, nor the questions and answers before the grand jury read to the jury or to him in the presence of the jury, followed by a further inquiry to the effect if those questions were asked him and those answers made before the grand jury. [Disapproving Everson v. Investment Co., 130 Mo. App. l. c. 308; and State v. Draughn, 140 Mo. App. 267.]

3. ——: ——: **Past and Present Recollection.** There is a wide difference between the doctrine of past and present recollection of a witness and that of refreshing his present recollection. In the former case the witness speaks from a record made by himself, or from one which when it was made he knew to be a true and correct recital of the facts, but of which when he testifies he has no independent present recollection, and regarding which he remembers only that, when the record shown him was made, it was correct. In that case the paper itself is competent. But a writing used for refreshing the memory of a witness is not itself competent, even in a civil case; and for a stronger reason, on account of the constitutional requirement for the confrontation of witnesses in a criminal case, the testimony of a witness taken before the grand jury should not be read to or in the presence of the trial jury.

4. HEARSAY EVIDENCE: Boys-Said Reputation. In the prosecution of Patton for keeping a gambling device, testimony that the "boys" called the place kept by him as "Hi Patton's place," is pure hearsay, and incompetent. Even if desired to be used as reputation evidence, a proper foundation must be laid to make it competent as general reputation.

5. GAMING DEVICE: Insufficient Evidence. The evidence in this case was not sufficient to sustain a conviction of the felony of keeping a gambling device, though it may be sufficient to support a conviction of the misdemeanor of playing "craps."

6. INSTRUCTION: Circumstances. In the prosecution of a defendant for feloniously keeping a gambling device, the State is entitled to all the circumstances tending to show that he was the keeper thereof; and an instruction asked by him which tells the jury "that the showing by the State of one or more acts of the defendant in connection with the crap game, tending to show that the defendant was at the time and place mentioned in the testimony the keeper of said crap table," etc., should be refused.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*E. S. Gantt* for appellant.

(1) There is no evidence that the defendant was the keeper of the game and the peremptory instruction should have been given. State v. Miller, 234 Mo. 588; State v. Solon, 247 Mo. 672; Nelson v. U. S., 28 App. D. C. 32; Howard v. State, 91 S. W. (Tex.) 785; Blum v. State, 47 S. W. (Tex.), 1002. First: There is no evidence that defendant set up, kept or furnished the table. Second: There is no evidence that defendant kept or furnished the dice. Third: There is no evidence that the defendant had the care or management or acted as master in charge of said table and pair of dice. Every element of the offense must be proven to convict the defendant. State v. Solon, 247 Mo. 673; State v. Bass, 251 Mo. 108. (2) The testimony of the witness Moore, that the room in question was "called and spoken of by the boys" as Hi Patton's and Rogers' and Patton's place or room was the merest hearsay, inadmissible and prejudicial to defendant. Mache v. State, 109 S. W. (Tex.), 126; State v. Levy, 168 Mo. 522; State v. Walsh, 203 Mo. 605; State v. Hughes, 71 Mo. 633; Sara v. State, 22 Tex. App. 639; Loraine v. State, 22 Tex. App. 640; Gambel v. State, 21 Tex. App. 357; Allen v. State, 15 Tex. App. 320; Burton v. State, 16 Tex. App. 156; Wharton's Criminal Evidence (9 Ed.), sec. 260; State v. Hand, 7 Iowa, 411; State v. Mosby, 53 Mo. App. 575. (3) The court erred in permitting the prosecuting attorney to read from notes of the grand jury to witnesses and ask them if they didn't so testify before the grand jury. Comm. v. Phelps, 77 Mass. (11 Gray) 73; Pride v. State, 107 S. W. 819. The prosecuting attorney has no right to cross-examine or impeach his own witnesses. Un-

der' proper circumstances, he may have the witness read his testimony given before the grand jury for the purpose of refreshing his memory. After the witness has read his testimony before the grand jury, he may then inquire of the witness what his recollection is about the matter. In other words, the witness must testify from his own recollection after he has read his testimony before the grand jury. Shrouder v. State, 121 Ga. 615; State v. Aspara, 113 La. 940; Smith v. State, 46 Tex. Cr. 267; State v. Legg, 59 W. Va. 315; Billings v. Ins. Co., 70 Vt. 477; Vastbinder v. Metcalf, 3 Ala. 100; Fitzgibbon v. Kinney, 3 Har. 317; Finch v. Barclay, 87 Ga. 393; Johnson v. Culver, 116 Ind. 278; Owings v. Shannon, 8 Ky. 188; Key v. Lynn, 14 Ky. 338; Mitchell v. Robinson's Exr., 7 Ky. L. R. 98; Lawrence v. Barker, 5 Wend. 301; Green v. Brown, 3 Barb. 119; Howie v. Rea, 75 N. C. 326; Putnam v. United States, 162 U. S. 687. (4) The court erred in not giving the instruction asked by the defendant: That instruction told the jury that before they could convict the defendant, they should consider the whole evidence in the case, and unless they believed beyond a reasonable doubt, from the whole evidence, that the defendant was the keeper, then they should acquit him, even though some circumstances in the case might raise a suspicion in their minds. State v. Miller, 234 Mo. 588; State v. Howell, 117 Mo. 324; State v. Wells, 111 Mo. 533.

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

(1) The trial court's ruling was entirely correct. The prosecuting attorney undoubtedly had the right to refresh the witnesses' memories from the memoranda of their evidence taken before the grand jury, as the witnesses seemed to have failed in memory. 1 Greenleaf on Evidence, sec. 436; Sandwell v. Sandwell, Comb. 445, Holt. 295; Nichol v. Webb. 8 Wheat.

326; Wood v. Cooper, 1 Car. & K. 645; Billingslea v. State, 85 Ala. 323; State v. Miller, 234 Mo. 588. It is not the memorandum that is competent, it is the memorandum that may be used to refresh the witness's memory. Putnam v. U. S., 162 U. S. 697; Hickory v. U. S., 151 U. S. 303; Morrison v. Chapin, 97 Mass. 72; Insurance Co. v. Evans, 15 Md. 54. (2) The ruling of the trial court in denying the request of defendant's counsel to examine the notes of the testimony given by the witnesses before the grand jury is not subject to review on this appeal, as no exception was taken in the motion for a new trial to the trial court's action in this regard. Sec. 5285, R. S. 1909; State v. Mann, 83 Mo. 589; State v. Scott, 214 Mo. 257; State v. Wilson, 225 Mo. 503; State v. Holden, 203 Mo. 581; State v. Gatlin, 170 Mo. 354. (3) The testimony was amply sufficient to prove every essential element of the charge filed against the defendant. Sec. 4750, R. S. 1909; Stevenson v. State, 83 Ga. 575; Scott v. State, 29 Ga. 263; State v. White, 123 Iowa, 425. One who permits or suffers a house or place owned, occupied or controlled by him to be used for gambling purposes violates this statute. State v. Stillwell, 20 Ark. 96; Stith v. State, 13 Ark. 680; Alexander v. Commonwealth, 12 Ky. L. R. 470; State v. Ebert, 40 Mo. 186; State v. Smith, 19 Mo. 683; State v. Fulton, 19 Mo. 680; State v. Mohr, 55 Mo. App. 329. Where two or more persons have the joint control or occupancy of premises (as in this case), one of them may be guilty and his cotenants innocent of the offense of permitting the use of premises for gaming. White v. Comm., 5 Ky. L. R. 318.

FARIS, J.—Defendant was convicted in the circuit court of Callaway county upon an indictment charging him with the offense of feloniously keeping a gambling device, consisting, as it is averred, of a crap table upon which dice were used, and which table and dice constituted a device adapted for the playing of

the game commonly called "craps." The trial of the defendant resulted in his conviction and the fixing of his punishment at imprisonment in the county jail for a term of one year. After the usual motions for a new trial and in arrest, defendant has appealed and is now here urging reversal.

The facts, in the view we take of the case, are not of very much pertinence, but in brief they tended to show that some time prior to the 5th day of February, 1912, upon which date the indictment lays the offense; defendant and one Rogers were partners in the second-hand furniture business at Fulton, Missouri. They used for their business, in addition to their store room, an old building containing two rooms, as a warehouse for the storing of such furniture as they were unable to get into their store. This old building had formerly been used as a paint shop by said Rogers. In the back part of this paint shop was a room which could be entered from the rear, or from an alley adjoining it, or by going through the paint shop. On divers days about the 5th of February, 1912, the testimony shows that there was in this rear room of the paint shop an old table, covered with cloth, which some of the witnesses spoke of as an old billiard table. It is not definitely stated, however, that it was an old dismantled billiard table; merely that it had the appearance of such. There was a pool hall in the vicinity. The testimony shows that defendant Patton, on three or more occasions about the date mentioned, was in this room sitting by this table and engaged with the witnesses who testified in the case and with other persons, in the playing of craps with dice upon the table in question. The testimony shows that defendant himself played the game of craps and made bets thereon and that he rolled the dice as did the others who were seated about the table and who were engaged in the several games. One witness says that he "supposed" that defendant was banking the game; another one verified the state-

ment made in the witness's testimony before the grand jury, which was exhibited to the witness, that defendant was banking the game. Aside from the fact that the room in question, from its location and situation as a part of the warehouse, was in the possession of the defendant and his partner Rogers, and that the table and the dice were in that room at the time; that defendant was seen on several occasions sitting by the table rolling dice, and making bets upon plays; that he cashed two checks for a certain player to enable him to get money with which to play; that one witness "supposes" that defendant was banking the game, and another states as a conclusion, but not the facts on which he bottoms the conclusion, when the witness's memory is refreshed in the manner below stated, that defendant was banking the game, there is no evidence that defendant ever set up or kept the table or device, and none, except the inferences arising from the facts stated, that he owned either the table or the dice which together are alleged to constitute the device denounced.

Upon the trial the prosecuting attorney, under the guise of refreshing the memory of Moore, Sheets and Qualls, who were witnesses in the case for the State, read from their testimony given by them before the grand jury and asked these witnesses categorically if they had not made the statements which he read to them. The defendant duly objected to this action of the prosecuting attorney and, being overruled, properly saved his exceptions.

As showing clearly and definitely what occurred in this behalf we set out below an excerpt from the record showing in detail the manner and form of the examination, the objections and exceptions of the defendant and the ruling of the court thereon:

"Q. Just to refresh your memory, I will ask you if you didn't testify before the grand jury in May, 1913, to this fact—

"By Mr. Gantt: If the court please, I object to the prosecuting attorney asking the witness if he didn't testify to certain things before the grand jury. The question now is, what this witness under oath remembers of this occurrence and we object to the prosecuting attorney using notes of the grand jury or notes of something else in which it does not appear who took the notes, or it does not appear anything about it.

"By the Court: Objection overruled.

"To which action of the court the defendant, by his counsel, then and there at the time duly excepted and saved his exceptions.

"By Mr. Cave (reading) : 'I was in Patton's place two or three times in January and February, 1912, and found Patton sitting at the table with a stack of money in front of him.' Is that true or not? A. Yes, sir; and he was not the only one that had money in front of him.

"Q. You did see him at that time, or about that time? A. I could not say for sure.

"Q. Didn't you testify to that before the grand jury? A. Well, I reckon I did—if it is down there, I testified, of course.

"Q. Didn't you also testify to this: That you shot craps there at that time and that you were playing on a sort of a pool table? A. Yes, sir.

"Q. And that Patton was banker of the game and sat there with a stack of money at his side?

"By Mr. Gantt: We object to this witness stating that Patton was the banker of the game. That is a matter for the jury to determine after hearing the testimony.

"By the Witness: Somebody explain what a banker is and I can tell.

"Q. By Mr. Cave: Didn't you testify to those facts—

"By the Court: He is asking you whether or not you testified to that before the grand jury. Did you, or not?

"A. How can I remember now what I testified down there?

"By the Court: Don't you ask questions—you answer that question 'yes' or 'no,' if you can. Do you know whether you testified that before the grand jury?

"A. I know I testified some things.

"By the Court: Read that to him again. We will see if we can't help his memory some.

"By Mr. Cave, reading: 'We played on an old pool table. Patton was banker of the game and sat there with a stack of money at his side.' Did you testify to that before the grand jury?

"A. I think I did.

"Q. 'The rest of the boys stood up around the table.' Did you testify to that? A. Yes, sir, we all stood up.

"Q. 'I would put my money down on the table and Patton would take money from his stack and fade me and then I would roll the dice.' Did you testify to that? A. Yes, sir."

The above method of examining the witnesses for the State was used by the prosecuting attorney as to others of the State's witnesses. But as what we have set out above illustrates the nature of the alleged error, we need not burden the record with but the one instance.

Other facts in the case, if they shall become necessary to elucidate what we say, will be found set forth in the opinion.

I. A number of alleged errors are called to our attention by the brief filed herein by learned counsel for defendant. It was urged upon us in oral argument made prior to the filing of defendant's brief, which is now before us, that the court erred in refusing to allow defendant and his counsel to examine the transcript containing the testimony which the witnesses gave be-- fore the grand jury, and which testimony the State used to refresh the witnesses' memory. This objection is abandoned in the brief filed for defendant. It is just as well that it is so, for the reason that no such matter was urged in the motion for a new trial. It is well settled that the adverse party is entitled to see the data used in refreshing the memory of the witness, in order that he may cross-examine the witness touching the same. But it is equally well settled that an error of this sort must be called to the attention of the trial court by the motion for a new trial. This objection, therefore, to which, in its connection with another matter urged, we shall again advert, is disallowed to defendant because he failed to preserve it properly for our review.

*Refreshing Memory of Witness.*

Our bill of rights as written in our Constitution provides that an accused person upon his trial has the right to be confronted with his accusers. What was done here violated the rule of confrontation. [Billingslea v. State, 85 Ala. 323.] If the State may use a sort of evidence which cannot, the statutory provision for secrecy regarded, ordinarily be available to the defendant, such use should be based upon a condition of things akin to the necessity of the case, and in order to forestall a miscarriage of justice; so that the enforcement of the criminal law may be carried on with dignity and not so as to become a "hissing and a by-word."

In reason and logic we must deduce the privilege here of refreshing recollection from the well-settled

rule that a witness being fair and truthful and desirous of stating the facts as they were, but being by the lapse of time of hazy memory, may refresh his recollection by referring to writings, plats, maps and similar things made by the witness himself. [Green v. State, 53 Tex. Crim. App. 490.] He may likewise use in refreshing his memory, data, instruments, plats or other papers, which he knows to be correct, however he may have obtained such knowledge, as for example, because such data were made in his presence, or under his direction, or dictated by him, or in divers other ways; but not by papers of which he knows nothing of their correctness or verity, and of which he had no part in the making. [State v. Fannon, 158 Mo. 149.]

The last clause of the above statement is not in accord with the view taken by Mr. Wigmore, the learned editor of the sixteenth edition of Greenleaf on Evidence (1 Greenleaf on Evidence, [16 Ed.], 439c) where it is said, that the memory of the witness may be refreshed by any paper whether the same is known by the witness to be correct or not. This view of Mr. Wigmore has been followed by our St. Louis Court of Appeals. [Eberson v. Investment Co., 130 Mo. App. l. c. 308.] We do not find this statement of the learned author and of the Court of Appeals to be borne out either by the cases which he cites to support it, or by the great weight of the authorities which we have examined and a few of which we cite. [Wellman v. Jones, 124 Ala. 580; Acklen v. Hickman, 63 Ala. 494; Doyle v. Railroad, 113 Ill. App. 532; Dryden v. Barnes, 101 Md. 346; Davis v. Allen, 9 Gray (Mass.), 322; Fritz v. Burriss, 41 S. C. 149; Greiner v. Ins. Co., 40 Pa. Sup. Ct. 379; 40 Cyc. 2458.] The ease with which, as Prof. Muensterburg tells us, the human mind is influenced by suggestion, would seem to form an insuperable psychological objection to the use of data for this purpose, of the correctness of which the witness is ignorant. However this may be, and what-

ever may be the weight of authority on this question, the Missouri rule, which we must follow unless we deem it wrong on principle, as we do not, is in accord with what we here say and against the rule urged by Wigmore's Greenleaf. In the case of State v. Fannon, supra, it was said:

"As the case must be reversed for errors already noted, we add that if this case is further prosecuted no such liberality should be shown against the prisoner as to permit the justice of the peace to swear by an exhibit filed by defendant in the case to refresh his memory. This witness, in view of all the circumstances, should have been required to testify to the testimony of the defendant, without the aid of defendant's offset. He was by no means an unwilling witness, and the court should not have permitted him to be led as he seems to have been in giving his evidence."

Since the witness may use such data of his own volition (State v. Kremling, 53 Iowa, 209; Wagner v. State, 53 Tex. Crim. App. 306), it would seem logically to follow that the prosecuting attorney, if he finds the witness hostile, or evasive, or of hazy memory, may also use data to refresh the memory of the witness. Such writings, whether they be notes, or copies of evidence taken before the grand jury, and made naturally out of the presence and hearing of the defendant on trial, or other data, are not as to their contents, competent. The offering of their contents violates the hearsay rule, as also that provision of the Constitution which vouchsafes to the accused person on trial the privilege of confrontation by his accusers. We know of no reason, however—certainly none arises from our statute enjoining secrecy—why the State may not, in a proper case, use the testimony of a witness taken before a grand jury to refresh the bad recollection of that witness. If these grand jury notes are used for this purpose, it would seem that the simp-

lest logic would dictate a plain and easy means of a proper use. Clearly that they may not be used as a means of oppression, smacking of the "third degree," or as a method of unfair advantage known to, and therefore open to be used by, the State, and not by the defendant, they ought to be used in the first instance from the necessity of the case and only in the sound discretion of the trial court. When the State is examining a witness for the State who has, as to the matter on trial, theretofore given evidence before the grand jury upon which evidence, so taken *ex parte* before this secret inquisition, the indictment on trial was found, or is partially, or wholly based, and the witness is evasive, or untruthful, or so contradicts his evidence before the grand jury as to surprise the State, the memory of the witness may be refreshed by the copy of the notes, or the transcript of the witness's testimony taken before the grand jury. Refreshing, as we here use the word, does not mean identifying the paper writing as being a true transcript of what the witness said before the grand jury, and then reading the paper to the jury, or to the witness in the presence and hearing of the jury; neither does it mean offering the paper writing or copy of the witness's grand jury testimony to the jury. For if either be done, it would be tantamount to offering (and nearly as unfair as it would be to offer) both the witness himself and the deposition of the witness taken *ex parte* out of the presence and hearing of the defendant, and without giving notice of the taking thereof—and so making by indirection two witnesses to grow where only one grew before. But the State having been surprised by the testimony of the witness on the trial by reason of a serious departure from and contradiction of the witness's former testimony taken before the grand jury, may ask the witness, in order to refresh his memory, if he did not testify before

the grand jury, and may exhibit the paper (without reading it and without corporeally offering to the jury the paper, or the contents thereof) to the recalcitrant witness, permit the witness, if he wish, to examine his testimony, his signature and other insignia of verity, for the purpose of identifying the copy of the testimony as a true type of what the witness said. Then when he has identified and examined his testimony, the question upon which he had deviated or was doubtful, before he refreshed his memory, may again be asked the witness. If necessary to prevent the contents of the paper shown to the witness from getting to the jury, the latter may be withdrawn while the witness is examining and identifying his testimony. Manifestly from the reason and history of the rule, if the witness deny his statements or refuse to identify the paper as a copy of what he said before the grand jury, the State is concluded and such paper may not be identified by another witness present, as for example, a member of the grand jury, and then be used to refresh the memory of the reluctant witness, however great the advisability of the situation may dictate the subsequent refreshing of the witness's memory by a prosecution of him for perjury. This, for the reason that one may not impeach his own witness; and, besides, it is difficult to see how the memory of a witness could be refreshed by a paper made up of statements which the witness denies he ever made.

Learned counsel for the State have from the citations furnished us, confused the doctrine of *past and present recollection,* with that of *refreshing present recollection.* [1 Greenleaf on Evidence (16 Ed.), 439a, 439c.] In the former case the witness speaks from a record made by him, or from one which when it was made, he knew to be a true and correct recital of the facts, but of which, when he testified he had no independent present recollection, and regarding which he remembers only that, when the record shown him

was made, it was correct. In effect, in lieu of his own
testimony he introduces a witness and merely vouches
for that witness's veracity.   In such case the paper,
writing or instrument so identified, that is, the wit-
ness vouched for, is itself competent as evidence and
may be offered.   [State v. Brady, 100 Iowa, 191;
Moots v. State, 21 Ohio St. 653.]   But upon the pre-
cise question before us, that of refreshing present
recollection, the data used for refreshing the memory
is not itself competent, even in a civil case.   [Acklen
v. Hickman, 63 Ala. 494; Elmore v. Overton, 104 Ind.
548; Curtis v. Bradley, 65 Conn. 99; Eder v. Reilly,
48 Minn. 437.]   This is so far the reason stated by
Lord ELLENBOROUGH, in Henry v. Lee, 2 Chitty, 124,
that "it is not the memorandum that is the evidence,
but the recollection of the witness."   The party
whose witness uses the data to refresh his memory
has no right to have the same read to or handed to the
jury.   It is only the adversary party who may, if he
wish, use the memory refreshing data to impeach the
witness's recollection, or to cast doubt upon the ques-
tion of whether the witness's testimony was in fact
refreshed.   [1 Greenleaf on Evidence (16 Ed.), 439c.]
A fortiori then, should it be forbidden in a criminal
case to read to or in the presence of the jury the testi-
mony of the witness taken before the grand jury, on
account of the constitutional requisite of confronta-
tion, by which it is guaranteed that an accused person
upon his trial may "meet the witnesses against him
face to face."   [Constitution of Missouri 1875, sec.
22, art. 2.]

    In the case at bar the learned and diligent prose-
cuting attorney read *verbatim* to the witnesses Moore
and Qualls and to other witnesses for the State, ques-
tion after question and answer after answer from the
paper which the attorney stated was the transcript of
the testimony of these witnesses as given by them
before the grand jury.   As to one or more of these

witnesses the alleged transcript of the witness's testimony was not identified by him, nor does its identity otherwise appear, either as being the record of the grand jury, or as being a true copy of the testimony of such witness before that body. But the State plunged *in medias res* and began reading the answers from the paper to the jury, merely pausing occasionally to ask the witness if he had made such answers before the grand jury.

For the reasons which we labor to make clear this was prejudicial error for which the case must be reversed.

We have found but one case like the one at bar in respect to refreshing the memory of a reluctant witness by showing him what he testified to before the grand jury. That is the case of State v. Draughn, 140 Mo. App. l. c. 267. There no reason whatever is given for the rule announced, and the cases cited do not, except in the most remote principle, bear out the rule. The case of Smith v. State, 108 Am. St. 991, which was a Texas case, is almost in point, except that the witness whose memory was refreshed by the grand jury notes of his testimony, stated that he had an independent recollection of the facts aside from that produced by the refreshment afforded his memory by the notes. In the cases of Wagner v. State, 53 Tex. Crim. App. 306, and State v. Kremling, 53 Iowa, 209, the witnesses themselves being in doubt, and of hazy memory, asked to see their testimony as given by them before the grand jury. This was permitted and it was held on appeal not to be error. There may be other cases, but we have not been able to find them after a most diligent search.

However, for the reasons which we set out, and which seem sound to us, such refreshing of the memory of a witness in the manner and to the extent and under the circumstances above suggested is permissible.

II.  As this case will have to be tried again, if the State is so advised, we may as well say that it was **Hearsay.** error to permit testimony that the "boys" called the place kept by the defendant, "Hi Patton's place." This was hearsay pure and simple. The witness would as well have said that he heard John Doe, John Smith and Richard Doe, the same being the names of the "boys" who frequented the place and who conversed with the witness, say it was operated by defendant and was "Hi Patton's place."

If this testimony could be upheld as being admissible as reputation evidence, touching the competency of which upon the facts here and the point to be proved here, we give no opinion, then no proper foundation was laid to make it competent as general reputation.

III.  If there be taken from this case the hearsay testimony, the testimony as to what the witnesses **Insufficient Evidence.** *supposed,* and the other incompetent evidence read from the grand jury notes, then there is not enough competent testimony left in this record to subject even a crap shooter (whose generally depraved altitude in the scale of humanity, morals and decency we need not pause to characterize) to the danger of incarceration in the penitentiary for a term of two years. [State v. Solon, 247 Mo. 672; State v. Miller, 234 Mo. 588.] In the case of State v. Solon, supra, we labored to show the elements which distinguish the felony of setting up a gambling device, from those which go to make up the ordinary misdemeanor of gaming. We often find a dangerous twilight zone where the facts so imperceptibly shade into a felony on the one side and into a misdemeanor on the other, that it is almost impossible to distinguish the line of demarcation. The Legislature has the right to say that a pack of cards carried by a traveler; a writing table, or a washstand in a

guest room of an inn; an idle hour, an idle friend or two and a game of five-cent ante, make a crime meet for the taint of felony and two years in the penitentiary. But they have not so written it; neither will we.

IV. Defendant contends that the following instruction asked by him upon the trial and refused by the court, should have been given, to-wit:

"The court instructs the jury that the showing by the State of one or more acts of. the defendant in connection with the crap game mentioned in the testimony, tending to show that the defendant was at the place and time mentioned in the testimony the keeper of said crap table and pair of dice is not sufficient to justify you in returning a verdict of guilty, unless you believe beyond a reasonable doubt from all the facts and circumstances in evidence in the case that the defendant was at the place and time mentioned in the testimony the keeper of said crap table and pair of dice."

The refusal of this instruction was proper. In effect it deals with circumstantial evidence, but includes only "one or more acts of the defendant" in order to constitute the circumstances upon which defendant might be found by the jury to

**Instruction: Circumstances.** have been the keeper of the table. The jury are the judges of the weight and credibility of the evidence, whenever there is upon a matter in issue any substantial evidence. They had the right to weigh not only one or two acts of defendant, but all and every of his acts as shown by the evidence in the case. Section 4761 permits a prima-facie presumption that he who from the evidence, appears to be the master, or. acts as master, or has for the time the care or management of the device, is the keeper thereof. Manifestly, this presumption allowed by the statute must usually and for the most part, be based upon circumstances and circumstantial evidence.

and the State is entitled to have the benefit of all of the circumstances. It is for the witnesses to state the circumstances, and for the jury to say from all of them—whether they be few or many—whether defendant appears therefrom to have been the keeper or acting as the keeper of the device.

Other matters are complained of but these things are not likely to arise upon the next trial, if such shall be had.

For the errors noted, the case will be reversed and remanded. *Walker, P. J.,* and *Brown, J.,* concur.