**STATE of Missouri, Respondent,**

v.

**John Ivory CRAYTON, Appellant.**

No. 48744.

Supreme Court of Missouri,

Division No. 2.

Feb. 12, 1962.

Motion for Rehearing or to Transfer
to Court en Banc Denied
March 12, 1962.

Luke, Cunliff & Wilson and Robert R. Schwarz, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., O. Hampton Stevens, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was convicted of second degree burglary and stealing, with five prior felony convictions. He was sentenced by the court to terms of three and two years respectively, or a total of five years' imprisonment. Essentially, the sole defense was insanity, supplemented to some extent by a theory of "involuntary" drug intoxication. Defendant was 25 years old at the time of the offense and the evidence indicated that he had used narcotic drugs in some form since he was 14 or 15 years old. Two of his prior convictions were for illegal possession of narcotics.

The facts of the offense may be stated very briefly. Persons in a second floor apartment heard noises coming from a vacant apartment above them and called the police, after first calling up the steps to the person there. Defendant came down the stairs, knocked on their door and was refused admittance; he then went on down to the front of the building where he was arrested. At that time he was wearing a sport coat, trousers and shoes which the complaining witness had placed in the vacant apartment a few hours earlier. That witness testified that he held a lease on the whole building. Defendant made no effort to escape. A third floor window opening on a fire escape was found open when the police went there after the arrest. At the time of the arrest defendant told the police (about 12:30 a. m.) that he was looking for a "married woman," but was not sure where she lived. The police found defendant's abandoned clothes in the third floor apartment from which the others were taken.

Defendant offered in evidence excerpts from the records of several admissions to the Malcolm Bliss Psychopathic Hospital, a branch of the St. Louis City Hospital. These covered a period from December 1956 to June 1960. In some instances defendant had been sent there by the police, in others he had signed voluntary applications for admission. He was shown in these records to have had hallucinations and delusions at times, and to have given histories of bizarre actions; at times he acted irrationally in the hospital as, for instance, crouching in a corner and asking for protection from the rats. The predominant diagnosis made was "Acute Brain Syndrome with drug intoxication." Another phase of the diagnosis will be referred to later.

A resident physician specializing in psychiatry, who had served for two periods of six months each at Bliss and had thus known defendant for approximately a year and a half, testified fully. He considered and stated the probable existence of "chronic brain syndrome with schizophrenic reaction," upon a hypothetical question assuming and relating various bizarre actions and hallucinations; he explained schizophrenia as an illness characterized by disorder of thought and mood, with hallucinations as secondary symptoms, and a poor prognosis; on further hypothesized assumptions, however, he stated that the schizophrenic reaction would probably be ruled out. This physician had also examined defendant at the hospital during the month before the trial upon order of the court. He testified that if the history given to him by defendant of a mental condition and delusionary ideas supposedly present at the time of the offense on October 14, 1960, were true, defendant was then psychotic and did not know the difference between right and wrong. In that history defendant had stated that he was walking past a tavern, that he went in and thought the people there were having a farewell party for him, that someone was going to kill him, and that he was not properly dressed, so he went outside and entered the place where the burglary was committed and took and put on the clothes. On cross-examination this doctor testified that in view of the various hospitalizations and defendant's whole history, his psychosis was self-induced, from drugs. Defendant gave a present history of taking amphetamine in quantities which, the doctor testified, tended to pro-

duce hallucinations and ideas of persecution; he further testified that, without the drug the hallucinations of defendant would disappear; that defendant had a "personality disorder" as his basic problem, independent of drugs, but that defendant "does know the difference between right and wrong today." The necessary inference from his testimony is that defendant did know the difference between right and wrong when not taking drugs. The doctor also testified that one addicted to a drug does not have the "normal ability" to resist it, and needs help. Two of defendant's relatives testified to peculiar actions on his part, but that testimony would add little to our consideration here.

■ Defendant's counsel complains first of the court's instruction on insanity, and particularly to a preliminary paragraph which defined insanity as a "physical disease located in the brain, which disease so perverts and deranges one or more of the mental and moral faculties as to render the person suffering from this affliction incapable of distinguishing right from wrong, * * *." Counsel insists that the instruction unduly increased defendant's burden which should merely require that he was so "mentally deranged as not to know right from wrong." Appellant cites no case holding this erroneous. The instruction is long and we do not quote it. Following that preliminary paragraph, the jury was further told: "* * if you find * * the defendant was so perverted and deranged, in one or more of his mental and moral faculties, as to be incapable of understanding at the moment he broke and entered * * * that such conduct was wrong, and further find that he, the defendant, at that time, was incapable of understanding that this act was a violation of the law, and if the jury find that he was then insane, they should find him not guilty. * * * The law does not excuse unless the derangement is so great that it actually renders the person incapable, at the time of its commission, of distinguishing between right and wrong in respect to the particular act that may be

charged and proved against him. * * * if, from the evidence, you further find that, at the time he did it, he was in such an insane condition of mind that he did not know he was doing wrong, and did not comprehend the nature and character of the act, then such act was not in law malicious or felonious, and you ought to acquit him on the ground of insanity, and by your verdict, so say." This definition of insanity, including the phrase "physical disease," has often been used in Missouri, and so far as we can find it has never been held erroneous; it has usually been properly coupled with further explanations, as here. State v. Duestrow, 137 Mo. 44, 38 S.W. 554, 39 S.W. 266; State v. Barbata, 336 Mo. 362, 80 S.W.2d 865. In State v. Goza, Mo., 317 S.W.2d 609, a most recent insanity case, the instruction approved was substantially identical with the one questioned here (as shown by our files) although this particular attack was not made there. The reference to "physical disease" is somewhat out of line with modern thought on the subject and could well be omitted, but in the instruction given here the whole issue was so clearly and completely covered that the jury could not have been misled; the controlling emphasis was upon a derangement in defendant's mental and moral faculties such as to render him incapable of understanding that his conduct was wrong. There was no error in giving the instruction.

■ Defendant next complains of Instruction No. 8, which was, in so far as material, as follows: "* * * if you further find and believe from the evidence that the defendant was intoxicated by drugs at the time, such intoxication is in law no excuse for or defense to such offense as you find to have been committed. Voluntary intoxication by drugs is never a defense to a criminal charge. The fact of such intoxication, if you find it to be a fact, is only to be considered by the jury in connection with all other facts, in determining the guilt or innocence of the defendant, and the degree of guilt, if you find he is guilty."

Counsel asserts that this instruction eliminated the defense of *involuntary* drug intoxication, and that defendant's history and the evidence justified such a defense, particularly in view of defendant's "personality defect" and long addiction. Counsel cites: State v. Riley, 100 Mo. 493, 13 S.W. 1063; Prather v. Commonwealth, 215 Ky. 714, 287 S.W. 559; Johnson v. State, 32 Ala. App. 217, 24 So.2d 228, and 22 C.J.S. Criminal Law § 72, p. 223. In Riley, a submitted instruction hypothesizing that continued, excessive drinking had impaired the mind of the defendant, was refused as not supported by the evidence. The court held that drunkenness was no defense and that "temporary insanity" resulting from voluntary intoxication did not constitute a defense; it did recognize that "long-continued habits of intemperance, producing permanent mental disease amounting to insanity, * * *" might relieve one of criminal responsibility; and the court further said that insanity of that sort is the "same in law as insanity arising from other causes." We have no such case here. In Prather, supra, the Kentucky Court seems to have recognized a form of insanity arising from the use of drugs, and that the use was involuntary because of the defendant's addiction; there was specific evidence, however, that the defendant was insane. In Johnson, supra, the Alabama Court recognized a condition caused by drugs and alcohol which prevented one from forming the required criminal "intent" to steal, and thus operated as a defense. These cases are not in harmony with our existing law. An instruction directing an acquittal if one was so intoxicated as to be incapable of forming an intent was held properly refused in State v. Beasley, 353 Mo. 392, 182 S.W.2d 541. We have been cited to no Missouri case, and have found none in our own research, which recognizes a supposed "involuntary" use of drugs or drink as an excuse for or mitigation of crime, whether as a temporary insanity or otherwise. Nor was there any substantial evidence here to support a theory that the use of drugs by defendant was "involun-

tary"; it was merely shown that he, as an addict, had less will to resist. The failure of this instruction to submit a defense of involuntary drug intoxication was not error. In so far as the use of drugs may or may not have resulted in or contributed to any actual *insanity*, defendant was given the full benefit of that defense under the insanity instruction already discussed.

■ When the arresting patrolman was on the stand as a State's witness, it was developed on cross-examination that he had read a copy of his own police report about two or two and one-half hours earlier in the Courts Building; this had been shown to him by the Assistant Circuit Attorney. The witness had brought no report or copy with him, nor was any shown to him while he was testifying. This testimony was given less than three months after the arrest. Upon interrogation he said that the report refreshed his memory as to the details. Counsel for the defendant asked that the court allow him time to have the report subpoenaed, in order that he might use it in his further cross-examination. The court declined the request, noting that the issue was defendant's mental capacity, that nothing in the cross-examination indicated that anything could be "gained by this," that the case was "less than three months" old, and that the witness was not hostile. Apparently counsel hoped to get from the report further details indicating some form of incompetency; the officer had already testified to the essential facts of the arrest, including his conversations with the defendant. Counsel cites: State v. Tracy, 294 Mo. 372, 243 S.W. 173; State v. Patton, 255 Mo. 245, 164 S.W. 223; and State v. Miller, 234 Mo. 588, 137 S.W. 887. In Tracy, supra, the court said in part, 243 S.W. loc. cit. 176: "Where a witness bases his testimony on a memorandum or other writing, having no independent recollection of the facts, such writing must be produced if required, in order that opposing counsel may inspect it, * * *." Counsel apparently relies on that statement; but there (on the issue of the identity of certain barrels of

838

whiskey stolen from a bonded warehouse) it appeared that the witness had an independent knowledge and recollection, he had not used any records on the stand, and his testimony on the identity of the stolen barrels was held to be sufficient without the production of the warehouse records. The case is of no aid to defendant here. In Patton, the prosecutor read to a State's witness from grand jury notes to refresh his recollection, and the court held that defense counsel had the right to see the notes. The holding in Miller, supra, was substantially the same.

In State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42, the court stated that defense counsel should be permitted to see a paper used by the prosecutor in refreshing the memory of a State's witness *"while he is testifying"*; the refusal there was held error, but harmless. And see, generally, State v. Nardini, Mo.App., 186 S.W. 557; State v. Jackson, Mo.App., 194 S.W. 1078; Bova v. St. Louis Public Service Co., Mo.App., 316 S.W.2d 140. The purport of the Missouri cases seems to be that defense counsel should be permitted to examine a paper or document from which the witness has refreshed his recollection while on the stand and that to refuse this is error, but that this is not required where the paper is not produced and used at the trial, although it may have been examined by the witness previously. This view is re-enforced by the opinions in Lennon v. United States, C. A. 8, 20 F.2d 490, and Little v. United States, C.A. 8, 93 F.2d 401. Some dissent seems to be registered by Mr. Wigmore (3 Wigmore on Evidence, 3rd Ed., § 762, p. 111). But aside from the principles just stated, the court here had a very considerable discretion in determining whether it should recess the trial pending production of the police record on subpoena. And in making this determination it might properly consider, as it did, whether there had been any showing of probable materiality in the record. We hold that there was no error here. We note, however, as self-confessed dicta, that there would seem to have been

no legitimate reason, legal or strategic, why the Assistant Circuit Attorney should not have shown counsel the copy which he very apparently had in his file, thus eliminating all this controversy; indeed the trial court indicated that view, and referred to the matter, out of the presence of the jury, as a "tempest in a tea-pot." After all, the ultimate purpose of a criminal trial is to procure substantial justice and not merely to convict the defendant.

■ Defendant's last three points may be considered together. In a part of the hospital records introduced by defendant and dated June 27, 1960, the following (as later explained) appeared: "Final DX:1/ schizophrenic reaction, chronic paranoid type 2/ addiction to drugs, chronic (amphetamine at present) 3/ sociopathic traits. Recommend 1/ patient is in need of long term psychiatric care at State Hospital, and it is hoped he can be rehabilitated. Note: Patient discharged, state application getting nowhere. O.P.D.—P.R.N. K. Catazano." Counsel read this in full to the jury, except for the numbers, the letters in last line and the signature, with no explanations. Actually, that part of the "DX" (presumably diagnosis) numbered "1" was ruled through with a blue ink line, and the numbers were changed correspondingly, also in blue ink, thus ending with "2" instead of "3." This is verified here from the original exhibit. When defendant's medical witness was testifying, he called attention to the fact that part of that diagnosis had been "crossed out," but that he did not know the particular circumstances; thereupon the court examined the record, remarked that the record should so show, stated that these words should not have been read without an explanation, and instructed the jury that the words so lined out should be disregarded, reading them to the jury and explaining the renumbering. Counsel moved for a mistrial, which motion was overruled. One point made here is that the court erred in withdrawing this evidence and in instructing the jury as to the meaning of the lines so drawn, particularly

since the doctor who testified (not the one who wrote the diagnosis) could not determine "why" the lines were there. The point, essentially, is that the meaning of all this was for the jury and that the court's remarks were a comment on the evidence. It would have been much better for the court to have instructed counsel to exhibit the page in question to the jury, leaving it to the jury to determine the meaning of the lines and the effect, if any, of the diagnosis so stricken. The court here did assume to perform a function, though small, which was properly the jury's and therein it erred. In this instance, however, the error was wholly harmless. The only statement thus withdrawn was: "1/ schizophrenic reaction, chronic paranoid type." Other evidence, in the records and otherwise, refered to schizophrenia as a possible diagnosis; thus there appeared in the records the following: " * * * somewhat suspicious of schizophrenia." " * drawing * * has a peculiar schizoid or schizophrenic like quality." * "tests raise a serious question of schizophrenia * *." "Also rather paranoid * *." Schizophrenia was described in oral testimony and the symptoms were given. The only medical witness was defendant's own, and he supplied the medical opinions upon which legal insanity was to be found or not found. This witness definitely considered "schizophrenic reaction" as a part of the diagnosis, stating, in effect, that certain symptoms indicated this and others did not. In addition, the jury had heard all sorts of evidence concerning hallucinations and bizarre actions, plus a history of long continued drug addiction. It is simply incomprehensible that the withdrawal of this highly technical phrase from one isolated spot in the evidence could have prejudiced the defendant. The cases cited by defendant under this point, State v. O'Connor, 105 Mo. 121, 16 S.W. 510, State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, and State v. Peebles, 337 Mo. 973, 87 S.W.2d 167, are inapplicable. Counsel insists that when evidence comes in without objection it is not subject to being stricken. Here the exact status of this particular evidence was not apparent to the court or to opposing counsel when it was read and hence there was no full opportunity to object. But in any event that argument is now wholly immaterial, for we have recognized error and have held the error harmless. The same ruling applies to defendant's last point which asserts error in the failure of the court to permit the exhibition of the discharge notes to the jury after the court's comments. This point obviously has reference to that part of the diagnosis which we have just been discussing.

The remaining point made is the supposed withdrawal by the court of the statement: "Patient discharged. State application getting nowhere." Counsel again cites the three cases last mentioned, and asserts that since that evidence came in without objection, improper or not, the court erred in withdrawing it. The trouble here is that the record does not support defendant. This part of the discharge note was fully read to the jury by defendant's counsel. Later, and following the lengthy colloquy about the lines drawn through certain words, the court observed to counsel, out of the presence of the jury, that the words quoted above were a commentary that did not belong in a medical record and that he "should not again refer to these words *." They were not stricken nor was the jury ever instructed to disregard them; consequently, there can be no error. The jury had the evidence and there is no requirement that anything shall be admitted twice.

We commend counsel for the energetic, able and wholehearted defense made here under court appointment and without remuneration. We find no error in those parts of the record which we examine independently under our Rule 28.02, V.A.M.R. The judgment is affirmed.

All the Judges concur.