STATE of Missouri, Respondent,

v.

Leon Herbert SMITH, Appellant.

No. 53114.

Supreme Court of Missouri,
Division No. 2.

July 8, 1968.

Motion for Rehearing and/or Transfer to Court En Banc Denied Sept. 9, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Austin B. Speers, Sp. Asst. Atty. Gen., Kansas City, for respondent.

J. Kehlor Carr, Jr., Clayton, for appellant.

STOCKARD, Commissioner.

Defendant was found guilty by a jury of knowingly transporting a female through the state for the purpose of prostitution in violation of Section 563.070, (all section references are to RSMo 1959, V.A.M.S., unless otherwise stated) and was sentenced

to imprisonment for a term of two years. He has appealed from the ensuing judgment.

Section 563.070, insofar as here material, provides that "any person who shall knowingly transport or cause to be transported, * * * any female person through or across this state for the purpose of practicing prostitution * * * shall be deemed guilty of a felony, * * *." The evidence authorizes a finding by the jury that in the early morning of April 24, 1966, the date charged in the indictment, defendant transported the prosecuting witness by automobile from her apartment in the City of St. Louis to a hotel in St. Louis County for the purpose of practicing prostitution.

Defendant contends that Section 563.070 is unconstitutional because it is "too vague and indefinite, and fails to set up an ascertainable standard of guilt." He argues that the legislature "could have clarified the statute by use of the words 'in or within,' but this was not done and the words 'through or across' are ambiguous." Defendant also contends that the evidence was insufficient because he "did not transport a female 'through' the State of Missouri, but merely from one county to another county."

■ It is a long established principle that a statutory crime must be defined with sufficient definiteness that there be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment. State v. Becker, 364 Mo. 1079, 272 S.W.2d 283; Ex parte Hunn, 337 Mo. 256, 207 S.W.2d 468; State v. Kornegger, 363 Mo. 968, 255 S. W.2d 765. However, impossible standards of specificity are not required. Eastman v. United States, 8 Cir., 153 F.2d 80, certiorari denied 328 U.S. 852, 66 S.Ct. 1342, 90 L.Ed. 1625, rehearing denied 329 U.S. 819, 67 S.Ct. 29, 91 L.Ed. 698. The test is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common under-

standing and practices. Berger v. United States, 8 Cir., 200 F.2d 818.

■ The word "through" is a function word capable of several meanings depending on its use. It may indicate a passage from one side to another, as "he walked through the gate." It also may indicate a means of communication, as "he spoke through an interpreter." But, as used in the statute under consideration it is used "to indicate movement from point to point within a broad expanse or area." Webster's Third International Dictionary. We have found but one case bearing on this issue, and that is Commonwealth v. Neely, 138 Pa.Super. 589, 10 A.2d 925. There the statute made it a crime to transport a female person "through or across this Commonwealth" for the purpose of prostitution. It was held that the transportation "in the Commonwealth from one county into another, is within a strict construction of the language of the act," and that the distance traveled is immaterial. We concur in this view. A common understanding of the phrase "through * * this state," in the context used, includes the conduct of the defendant in transporting the prosecuting witness from one point in the state to another point.

■ Defendant also asserts that venue was not in the circuit court of the City of St. Louis. He contends that if a crime was committed, it did not occur until he entered St. Louis County. We find no special statute pertaining to the venue of an offense charged under Section 563.070. Therefore, pursuant to Section 541.030 the venue is "the county in which the offense is committed." The elements of the offense of which defendant was charged, as defined by Section 563.070, are knowingly transporting a female person through this state for the purpose of prostitution. We find no reference to transportation from one county to another. The distance traveled is immaterial. Commonwealth v. Neely, supra. A violation of Section 563.070, under the evidence in this case, occurred in

the City of St. Louis, and venue was properly there.

The prosecuting witness first met the defendant on April 13, 1966. Over the objection of defendant she was permitted to testify that from April 2 to April 13 she engaged in acts of prostitution in St. Louis, and that from April 13 to April 19 she engaged in acts of prostitution after being conveyed to various places by defendant in his taxicab. Defendant assigns as error the admission of this evidence on the grounds that the prosecuting witness "did not know the defendant during the whole period and there is no showing that the defendant knew of her activities or had any participation in these activities." Defendant asserts that proof of these activities was "proof of other crimes and hearsay and attempted to show bad character of the defendant who did not offer proof of character."

■ The activities of the prosecuting witness from April 2 to April 13 was offered on the theory that the fact that she was a prostitute was an element of the offense. We note that counsel for defendant agreed that it was. We do not so consider it to be. The act of transportation and the purpose, that is, the intent of defendant, are the principal elements of the offense, and a person can be guilty of the offense by transporting a female person for the purposes of prostitution even though he is mistaken in his belief that the person so transported is a prostitute. As stated in Commonwealth v. Neely, supra, "The purpose in transporting determines the guilt regardless of whether that purpose be consummated."

■ We consider the evidence of the activities of the prosecuting witness from April 2 to April 13, before defendant became acquainted with her, to be immaterial, but it was not prejudicial to the defendant. It did not prove any prior crime on his part, and it did not affect adversely his character. While it may be said that this testimony was hearsay as to the defendant,

the prosecuting witness testified as to her knowledge. A judgment is not to be reversed because of the admission of irrelevant and immaterial evidence which is clearly not prejudicial to the defendant. State v. Fulkerson, Mo., 331 S.W.2d 565; State v. Spica, Mo., 389 S.W.2d 35, certiorari denied 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312; State v. Hacker, Mo., 291 S.W.2d 155.

■ Testimony by the prosecuting witness that from April 13 to April 19 defendant transported her by taxicab to various places in St. Louis for purposes of prostitution constituted evidence of the commission by him of separate and distinct crimes other than the one charged against him. Generally, evidence of a different crime is inadmissible. State v. Scown, Mo., 312 S.W.2d 782; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304. However, certain well-defined exceptions to the above general rule are recognized in the cases. In State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765, 768, this court said: "Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof." See also State v. Garrison, 342 Mo. 453, 116 S.W.2d 23, 24; State v. Saussele, Mo., 265 S.W.2d 290; 20 Am.Jur., Evidence, § 310. The theory advanced at the trial, out of the presence of the jury, was that it was incumbent upon the state to prove as an element of the offense that the prosecuting witness was in fact a prostitute. As previously noted, we are impressed with that theory, but if the evidence was competent on any theory or for any purpose, the trial court is not to be convicted of reversible error for admitting it. State v. Scown, supra, 312 S.W.2d at p. 789. One of the recognized exceptions to the general rule excluding evidence of other crimes is that evidence is admissible

when there is a "common scheme or plan embracing the commission of separate similar offenses." The evidence that defendant transported the prosecuting witness regularly (the evidence was that it occurred almost everyday) to various places for purposes of prostitution was admissible on this theory, and these regular occurrences constituted evidence bearing on the purpose of the transportation on the occasion mentioned in the indictment. See generally the discussion and the factual situation in State v. Scown, supra. See also State v. Adamson, Mo., 346 S.W.2d 85; and State v. Burnett, Mo., 429 S.W.2d 239. We find no prejudicial error in the admission of this evidence.

Over the objection of defendant, the prosecuting witness was permitted to testify that on April 22 she contacted a police officer and went to a police station with him; that she then went to the "morality office" with Detective Johnson and then to the corner of Ninth and Washington Streets; that on the following day she had a conversation with defendant, returned to the "morality office," and then returned to her home in the company of two detectives. Detective Koviak was permitted to testify, over defendant's objection, that a few minutes after midnight on the morning of April 23, he left police headquarters with the prosecuting witness, a Mr. Leo McDonald, and Detective Johnson, and that he and Detective Johnson went to the "vicinity of Ninth and Market Street" for about two and a half hours and then returned to police headquarters. He did not state that the prosecuting witness was at Ninth and Market Streets, or the purpose in going there, or what they did or saw at that location. Detectives Johnson and Hart also were permitted to testify that about 9:30 or 9:45 o'clock of the evening of April 23, they saw the prosecuting witness have a conversation with defendant in his taxicab at Ninth and Washington Streets.

Defendant asserts prejudicial error resulted from the admission of the above tes-timony because it was "hearsay and irrelevant" and permitted the jury to "speculate as to the conversation[s]."

As previously noted, the precise act, that is, the transportation of the prosecuting witness, occurring in the early morning of April 24, which constituted the basis of the indictment, was a part of a common scheme or plan embracing similar offenses. The fact that the prosecuting witness met defendant and talked to him following the times he transported her for purposes of prostitution, as testified to by her, and before the incident forming the basis of the charge against him, was not totally without relevancy. "Evidence is relevant if the fact it tends to establish tends to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue. Before evidence can be excluded on the ground that it is irrelevant, it is essential that it appear so beyond doubt. If the question of relevancy is doubtful, the settled rule is that the evidence should go to the jury for their own evaluation of it." State v. Tevis, Mo.App., 340 S.W.2d 415, 420; 29 Am.Jur.2d Evidence § 252; 22A C.J.S. Criminal Law § 600. The testimony that the prosecuting witness met the defendant tended to establish the scheme or plan and method of operation by defendant. There was also some relevancy to the testimony of the prosecuting witness that she contacted the police officers and went to the morality office. The arresting officers did not just happen to be present at the time of the arrest. This testimony presented background information pertaining to the knowledge of the police, and it tended to add credibility to the circumstances of the arrest.

We have difficulty, however, in determining any relevancy to the testimony that the prosecuting witness waited at Ninth and Washington Streets on the evening of April 22, and that Detectives Koviak and Johnson went to the vicinity of Ninth and Market Streets. Defendant as-

serts it was irrelevant, and we agree, and he contends that it was prejudicial because it "allowed the jury to speculate as to the conversation of [the prosecuting witness] and the policeman and the morality officers." With this latter contention we do not agree. We do not see how this testimony could in any possible way have been prejudicial to the defendant. The most it could have done was present two circumstances from which it could be inferred that either there was no scheme or plan of the defendant in his operations with the prosecuting witness, or if there was, it was not working. This would have been favorable to defendant; not prejudicial. When we consider all the circumstances we find no prejudicial error.

Defendant next contends that the trial court erred in failing to require the state to produce "a handwritten statement made by [the prosecuting witness] to the police concerning her activities in prostitution with the defendant" for the reason that "defendant's right of cross-examination was improperly limited."

During the cross-examination of the prosecuting witness, defense counsel asked her if she made "a statement to them in your own writing" when she first contacted the police, and she replied that she did; that she "wrote it all down." She stated that she had looked at the statement "two days ago, maybe," but that it did not refresh her recollection and she did not need it to "remember anything." She also stated that in the statement she did not "put specific rooms down or specific men" and did not recall whether she "gave them the date of April 13, 14, 15, 16 in that statement." Defense counsel then said this: "Your honor, at this time, I'd ask leave to produce that statement for the purpose of cross-examining the witness. I believe that there are material statements—I say to the Court that the Court could review it first * * * so that [it] will understand that this is not a fishing expedition, but rather I have good reason to believe under the circumstances of this case that there

are material facts in that statement which would tend to impeach this witness, particularly as to the dates." The trial court stated that "if the prosecution uses such a statement * * * you have a right to have it for cross-examination purposes, but until they do that, it's not available to you."

■ Defendant cites Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103; State v. Tippett, 317 Mo. 319, 296 S.W. 132; and State v. Crayton, Mo., 354 S.W.2d 834. It has been uniformly recognized that Jencks v. United States does not involve any constitutional question, but that it established a rule of procedure or rule of evidence applicable only to federal courts. State v. Mobley, Mo., 369 S.W.2d 576; State v. Simon, Mo., 375 S. W.2d 102; State v. Aubuchon, Mo., 381 S. W.2d 807. That rule of procedure is now governed by statute. See Public Law 269, 85th Congress, commonly called the Jencks Act, and Palermo v. United States, 360 U. S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287. The language of State v. Tippett, supra, cited and relied on by defendant, lends support to his contention, but "the pronouncements on the question" made in that case were expressly overruled in State ex rel. Missouri Pac. R. Co. v. Hall, 325 Mo. 102, 27 S.W.2d 1027. In State v. Crayton, Mo., 354 S.W.2d 834, the comment, "as self-confessed dicta," was made that in a factual situation similar to this case there "would seem to have been no legitimate reason" why the statement should not have been shown to defense counsel, and the same comment is applicable here. However, in the Crayton case it was held that it was not prejudicial error to refuse to require its production for examination.

■ In State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42, it was stated that defense counsel should be permitted to see a paper used by the prosecutor in refreshing the memory of a witness while he was testifying, and in State v. Tracy, 294 Mo. 372, 243 S.W. 173, it was held that opposing counsel was entitled to inspect a writing

used by a witness in his testimony. However, in State v. Crayton, supra, after reviewing these and other cases, the applicable procedural rule in Missouri was set forth as follows:

"The purport of the Missouri cases seems to be that defense counsel should be permitted to examine a paper or document from which the witness has refreshed his recollection while on the stand and that to refuse this is error, but that this is not required where the paper is not produced and used at the trial, although it may have been examined by the witness previously."

The rule in some states is more liberal than that in this state. See the cases collected in § 3 of the annotation at 7 A.L.R. 3d 181, entitled "Right of Defendant in Criminal Case to Inspection of Statement of Prosecution's Witness for Purposes of Cross-examination or Impeachment." However, as shown in § 4 of the above annotation, a substantial number of the states follow a rule substantially the same as in this state.

■ In this case the written statement of the prosecuting witness was not used by the prosecution, and it was not used by the witness to refresh her recollection. In fact, she stated that she did not rely on the statement. The request of defense counsel indicated that at most it might provide a mere possibility for impeachment, and that is not sufficient. State v. McDonald, 342 Mo. 998, 119 S.W.2d 286; State v. Garton, Mo., 371 S.W.2d 283; State v. Simon, Mo., 375 S.W.2d 102. In view of the authorities cited and relied on by defendant, we see no occasion to examine further the rule applicable in this state, and in view of that rule we find no error prejudicial to the defendant in refusing to require the production of the statement under the circumstances of this case. For cases generally supporting this result, see State v. Aubuchon, Mo., 381 S.W. 807; State v. Cochran, Mo., 366 S.W.2d 360, certiorari denied 375 U.S. 981, 86 S.Ct. 492, 11 L.Ed.2d

426; State v. Redding, Mo., 357 S.W.2d 103; State v. Hale, Mo., 371 S.W.2d 249; State v. Miller, Mo., 368 S.W.2d 353.

Defendant also contends that the trial court "erred twice to the prejudice of the defendant in failing to sustain the motion for mistrial made by defense counsel after Detective Johnson stated that he had made arrangements with the Salvation Army" to care for the prosecuting witness because "this was not in evidence and was inflammatory and tended to create sympathy and favor for the prosecution."

■ On cross-examination of Detective Johnson by defense counsel, questions were asked concerning the care and location of the baby of the prosecuting witness. A rather vague question was asked pertaining to when Detective Johnson had seen the baby, and he answered: "You mean after the arrangements were made at the Salvation Army?" The trial court sustained an objection to this answer, ordered it stricken, and instructed the jury to disregard it. Later, on redirect examination counsel for the state asked Detective Johnson whether he had "occasion to go to St. Charles, Missouri" on Saturday, April 23. The witness replied that he did, and that he went with Detective Hart, Officer Koviak, and the prosecuting witness. He was then asked: "And, when you got to St. Charles, where did you go?" The answer was: "Salvation Army." After considerable discussion out of the presence of the jury concerning the relevancy of this inquiry, the Court sustained defense counsel's objection, struck out the answer, and instructed the jury to disregard it.

■ In view of defense counsel's extended inquiry on cross-examination concerning the care and location of the baby of the prosecuting witness, we doubt that the reference to the Salvation Army in either case was objectionable. However, assuming the objections were properly sustained, the trial court was able to evaluate the effect and the prejudice if any of the answers. Every error which might occur

in the trial of a case does not necessarily require the granting of a mistrial. State v. Camper, Mo., 391 S.W.2d 926. The declaration of a mistrial is a drastic remedy, and the power of a trial court in this respect "should be exercised only in extraordinary circumstances," State v. James, Mo., 347 S.W.2d 211, which is another way of saying that "a mistrial should be granted only when the incident is so grievous that the prejudicial effect can be removed no other way." State v. Camper, supra. For these reasons the declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court who observed the incident giving rise to the request for a mistrial, and who is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal short of a mistrial. The proper function of an appellate court in the situation we have before us is to determine whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial. Under the circumstances of this case it obviously did not.

Defendant next complains about several incidents which occurred in oral argument. We shall consider them in the order presented.

In oral argument the state's attorney commented that the defense counsel had talked "about the Chief Trial Assistant [Mr. McDonald] * * * being out there and he was all over the place, * * * he would have you believe that this was all being controlled by our office." Counsel then said this: "But, there is nothing in the evidence about that. There was nothing that Mr. McDonald was out there that night, and for that matter we can use the name of Leo McDonald, we can use the name of Sergeant Soengen—doesn't make any difference what names may come up. If I start making up names—." Defense counsel objected, asked that the comment be stricken and the jury instructed to disregard it, and he then added this comment: "They didn't even call Leo Hadley McDonald as a witness." The objection was sus-

tained and the jury instructed as requested. The state's attorney then said: "Also been indicated that witnesses could have been subpoenaed by [defense counsel]." It is not clear, but apparently this was in reply to or was brought on by the comment that the state did not call Mr. McDonald as a witness. Defense counsel objected to this comment of the state's attorney, asked that it be stricken, and that the jury be instructed to disregard it. A conference was held out of the presence of the jury, and defense counsel said that there was "no evidence that there is any witness in this case that I would have to call. The only witnesses are either prosecuting officials or police which are * * * unfavorable to the defense. Now under those circumstances to indicate to the jury that I could have subpoenaed Leo McDonald, an adverse witness, I think is highly improper." During the conference the trial judge stated that he would tell the jury that Mr. McDonald "was not as equally available to the state as he was to the defendant." The court's statement to the jury was as follows: "The jury will disregard any argument with respect to the availability of Leo McDonald as a witness under subpoena to the defendant." Defendant then asked for a mistrial which was refused.

Defendant's contention is that the court erred in refusing to grant a mistrial because of "the argument of state's counsel that chief trial assistant, Leo McDonald, was equally available as a witness for the defendant as for the state." We have set out in detail what occurred in the presence of the jury, and what was said in conference out of the presence of the jury, because we have some difficulty in reconciling the statements and rulings. However, we do not find an argument to the jury that Mr. McDonald was equally available to defendant. Perhaps that is an inference from the comment by the state's attorney that Mr. McDonald could have been subpoenaed by defendant, which comment apparently was made in reply to the comment of defense counsel that the state "didn't even call [Mr.] McDonald as a witness."

There is no complaint that the instruction to the jury was misleading or not accurate.

"The granting or refusal of a mistrial for improper argument lies largely within the discretion of the trial court." State v. King, Mo., 334 S.W.2d 34, 40; State v. Green, Mo., 292 S.W.2d 283. We can only find an inference, and not a direct argument, that Mr. McDonald was equally available to the defendant as to the state, and there is no complaint about the court's comment, not in the presence of the jury, to the effect that Mr. McDonald was not as available to the state as to defendant. The trial court did instruct the jury that it should disregard any argument pertaining to the availability of Mr. McDonald as a witness, and we assume the phrase "under subpoena to the defendant" meant "by use of a subpoena at the request of defendant." We are not able to find that prejudicial error to defendant resulted from the ruling of the trial court.

During the closing argument the state's attorney commented on defense counsel's cross-examination, and he said that it indicated his position to be that "we're all conspiring to get Mr. Smith," and that everybody is "against him." Immediately thereafter the state's attorney told the jury, "I'm going to call on you to use your common sense and your experience and your understanding because if you do, and I know you will, you're going to see through these clouds, these defense tactics to throw dust in your eyes, * * *." The trial court overruled the objection that "that's highly improper." In closing argument, the state's attorney also said this: "Now, apparently Mr. Bruntrager says Mr. Smith wasn't around there Friday night when [the prosecuting witness] stood out in the rain for two and a half hours. Then he goes through some more of his points, and I begin to get the impression that he knows a lot more about prostitution and the business than I do, so maybe, he can account for where Mr. Smith * * *." Defense counsel objected, a conference was held out of the hearing of the jury,

and the state's attorney said this to the court in explanation of his comment: "The argument of defense counsel during his closing portion centered on if Mr. Smith was in that business why wasn't he out hustling, or call it what you will, on that night; why wasn't he turning tricks, bringing tricks out to her? This opens the door." The trial court stated: "You will not pursue it any further. I'll overrule the objection for the reason that counsel said he had the impression that from the basis of your [defense counsel's] argument that you know more about prostitution. I think it's a legitimate argument." Defense counsel then asserted that if the state's attorney "felt that that was an improper argument [by defense counsel], he has a duty to object; not to draw some inference from the argument, and that's what he's doing now." The state's attorney then said this: "I have no idea what took place as far as people waiting in the rain or why people were not there. I don't know. I don't know how people lead their lives or what they do. I have difficulties with my own. But, another point is raised, and it's an interesting one, and once again I say, why isn't he being fair with you, completely candid about what took place?" In answer to defense counsel's objection the trial court commented, "This is argument and he's entitled to comment upon your argument, Mr. Bruntrager."

The trial court necessarily must exercise considerable discretion in the control of oral argument. Defendant argues that by the argument in the first incident (defense tactics of throwing dust in eyes) it was indicated to the jury that "defense counsel is attempting to hide evidence that would prove guilt of the defendant." We do not so construe the argument and neither did the trial court. The expression, "throwing dust in one's eyes," is a common and generally understood expression used to convey the thought that one is attempting to confuse the real issue. The comment was directed to the tactics of the defense counsel in attempting to per-

suade the jury that there was a "conspiracy to get" the defendant. We find no prejudicial error in overruling the objection.

The latter two statements to which an objection was made clearly were comments on defense counsel's argument. We cannot agree that these statements charged the defense with concealment of evidence within the rule of State v. Swing, Mo., 391 S.W. 2d 262. These comments border on the line of impropriety, but the trial court had heard the previous argument and determined them not to be improper. We find no abuse of discretion in this respect.

■ Defense counsel argued strenuously that the state should have verified the statements of the prosecuting witness that she had gone to various places for purposes of prostitution. He argued that a lawyer owed a duty to the court to do so. He suggested that the prosecuting witness should have pointed out the rooms to which she went and that the state should have checked the hotel records. In closing argument, the state's attorney made this statement: "Mr. Bruntrager makes an issue * * * why didn't we go out and verify all of these things, go hither and yon and verify. Well, he overlooks something I think * * * I think this is indicative of a great many matters that were done which I leave, once again, to your judgment." Defense counsel first stated he did not know the purpose of the argument, and then objected "on the grounds it's not based on the record in this case." The objection was overruled. We consider the comment to have been in reply to argument by defense counsel. In effect, the argument was that the prosecution had verified those matters necessary to present its case, as evidenced by what had been presented. We find no abuse of discretion in overruling the objection.

■ In oral argument defense counsel told the jury, without objection, that the failure on his part to ask certain questions on cross-examination occurred because "there are certain rules of evidence," and "if there are some questions that weren't asked, you can bet your bottom dollar there is a reason behind it, and its a legal reason and not a factual reason." In closing argument, the state's attorney said this: "This is also another very interesting point that he would want to raise * * * certain things * * * but the rules of evidence bind and this is a sword with two edges. He talks about giving money. Why didn't we bring in a lot of this? Well, I say to you, and I'll look each and every one of you right in the eye and say I can't because of the rules of evidence." Following an objection a conference was held out of the hearing of the jury. Counsel for the state said, "If it's fair for him [defendant], it's right for the state in retaliation." Defense counsel argued that no objection had been made to his remark about the rules of evidence. The court stated that it considered the comment of the state's attorney to be improper, and that it would "correct both sides." It then instructed the jury as follows: "Ladies and Gentlemen of the jury, in considering your verdict in this case you will disregard any statements or inferences made by the state or by defendant's counsel to the effect that there was any evidence available in this case that they were barred from introducing by reason of rules of evidence." A motion for mistrial was overruled.

■ Defendant's objection was sustained and the court instructed the jury to disregard the argument of the state's attorney. Only defendant's request for a mistrial was denied. The trial court has considerable discretion in its rulings pertaining to the use of retaliatory arguments, State v. Cusumano, Mo., 372 S.W.2d 860, and in the circumstances shown here there was no abuse of discretion in refusing the request for a mistrial.

Defendant's final point is that the trial court erred in giving Instruction 8, commonly referred to as the "hammer" instruction, "after the jury had retired to de-

liberate, as the instruction coerced the verdict."

Instruction 8 was in the form which has frequently been approved. See State v. Baker, Mo., 293 S.W.2d 900. Defendant presents nothing in his point about this instruction which would make it erroneous. In his argument, which is broader than his point, he refers to the following circumstances. After the jury had deliberated one hour, had lunch, and then deliberated forty minutes it returned to the courtroom. In answer to questions from the court, the foreman stated that they had not reached a verdict, and that they stood "about 8 to 4" on the issue of guilt. The court asked: "* * * do you think if the court gave you additional time that by further reference to the court's instructions and review of the evidence and deliberation, you might reach a verdict in this case?" The foreman replied that "as of now, I don't think we could. Maybe if we deliberated a little bit more, some may be able to change their mind." The court then asked if "there [is] anybody on this jury that feels that by further deliberation that you would be unable to reach a verdict in this case?" Two jurors raised their hands. The court commented that the jury had only deliberated an hour and forty minutes, and it stated that it was going to give the jury an additional instruction and let them deliberate further. Instruction 8 was then read to the jury. One hour and thirty-five minutes later the jury returned a verdict of guilty.

Defendant asserts in his argument that the request "as to their division" constituted coercion. He relies on Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 which states the procedural rule applicable in the federal courts. However, the rule in this state is set forth in State v. Baker, Mo., 293 S.W.2d 900, and it is not error for the court to inquire of the numerical standing of a jury on the issue of guilt. See also State v. Nelson, Mo., 428 S.W.2d 518. Defendant then asserts that if asking for the division was not coercive, then the giving of Instruction 8 "after the court was informed that two members would not change their minds, was coercive, as shown by the guilty verdict after one hour and forty-five [thirty-five] minutes after giving Instruction No. 8." The fact a verdict was reached does not tend to establish coercion. The court returned the jury for "further reference" to the instructions, for "review of the evidence," and for deliberation. We have no reason to believe the verdict was reached for any other reason.

Our examination of other matters we review as required by Supreme Court Rule 28.02, V.A.M.R., discloses no prejudicial error.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.