**STATE of Missouri, Plaintiff-Respondent,**

v.

**Billy Eugene CANNON, Defendant-Appellant.**

No. 54252.

Supreme Court of Missouri,
En Banc.

April 12, 1971.

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Murray Stone, St. Louis, for defendant-appellant.

HOLMAN, Judge.

Defendant was charged with the offense of robbery in the first degree by means of a dangerous and deadly weapon. See §§ 560.120 and 560.135.[1] The information also charged four prior felony convictions, as follows: two convictions for the offense of robbery in the first degree, one of burglary, and one for carrying a concealed weapon. See § 556.280. The facts relating to those convictions were stipulated. The jury found defendant guilty as charged and the court fixed his punishment at imprisonment for a term of 18 years. Defendant appealed.

This appeal was originally heard in Division One where an opinion was adopted, but the case was subsequently transferred to Court en Banc because of the dissent of one of the judges. After the case was reargued the Division opinion failed of adoption en Banc and the cause was as-

1. Statutory references are to RSMo 1969, V.A.M.S.

signed to the undersigned. Portions of the aforementioned opinion are here adopted without the use of quotation marks.

The robbery in this case was committed by one individual. Four eyewitnesses made lineup and in-court identifications of defendant as the guilty party. The two points briefed on this appeal are (1) the lineups were conducted without counsel for defendant, were tainted, suggestive, and unfair, and hence the court erred in permitting the four witnesses to testify to either the lineup or in-court identification of defendant, and (2) the court erred in refusing to permit defendant to see the police report concerning this occurrence so that his counsel could use it in the cross-examination and possible impeachment of the eyewitnesses.

The occurrence in question took place at about 8:50 p. m. on February 16, 1968. In view of the identification testimony offered by the State we will refer to the robber as the defendant. According to the evidence defendant entered the front door of the Save-Way Market armed with a gun. He said, "This is a holdup," and caused several people near the check-out stand to line up against the window. At about that time the owner, Mr. Lubeck, came from the rear of the store and defendant directed that he take the money from the cash register (about $200) and place it in a paper bag, which was done. Defendant then required each of the other persons there to empty their wallets onto the counter and that money was then placed in the bag. One of the employees, Gerald Hooper, was slow in emptying his wallet and defendant stuck the gun in his ribs and said, "You think I'm playing? I'll blow your brains out." Defendant then took the bag of money and backed out the front door, threatening to shoot anyone who followed him. There was good light in the building and at least six people observed the defendant during the ten or twelve minutes he was in the store.

Lubeck and three of his employees testified at the trial. Two of the other witnesses did not testify, apparently because one of them was suffering from a heart condition, and the other was serving in the Marines at the time of trial.

Defendant was arrested at about one o'clock a. m., on February 18. He was taken to the District Police Station where he was viewed a short time later and identified in a lineup by Lubeck and Chilton. Another lineup was held at Central Police Station the following afternoon where Lubeck and Chilton, as well as the two other employees, John Hursey and Gerald Hooper, viewed a four-man lineup and each identified defendant as the person who committed the robbery. At the trial each of those four witnesses testified concerning the lineup identifications and also made in-court identifications of defendant as the one who entered the store and took the money. Each of these witnesses was very positive in their identifications, Lubeck saying, "I am definite, positive, no question in my mind whatsoever." Mr. Hooper, in answer to a question as to whether there was any question in his mind that defendant was the person, answered, "No, sir, there is no question." In answer to a similar question, witness Chilton said, "I am sure, sir," and Mr. Hursey testified on that point as follows: "Q This is the man about which you have testified? A Yes. Q No question in your mind about that? A No question in my mind whatever."

The defense was an alibi. Defendant presented as a witness his cousin, Irving Sprous, who testified that he was with the defendant from about 5:30 p. m. on the day of the robbery until after midnight. William Poirrier testified that he, in company with two girls, met defendant and Sprous at about 9 p. m. on the day in question and that they were all together until he had to leave at 11:30 p. m.

Defendant moved to suppress the anticipated identification testimony of the store employees on the ground that the lineup procedures violated the rules of United States v. Wade, 388 U.S. 218, 87 S.Ct.

1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, both as to suggestiveness and as to lack of counsel. After a hearing prior to trial the court overruled the motion. Similar objections were made during the course of the trial when the identification testimony of the store employees was offered and, again, overruled by the court. Near the close of the trial the court expressly found that the in-court identifications were the result of the observations which the victims made of the holdup man during the commission of the offense and not as the result of the lineup.

While there is evidence indicating the lineup procedures were leading and suggestive in certain respects, there is testimony in the record which supports the finding of the trial court that the in-court identifications were based on what the witnesses saw at the time the offense was being committed and were not the result of improper or suggestive lineup procedures. As to absence of counsel at the lineup, this was a disputed fact issue based on the testimony of the police officers that defendant was offered counsel and did not want it, and defendant's testimony that no such offer was made, and, that he did not make a waiver. The trial court resolved this factual issue in favor of the State and there is evidence in the record to support the finding. Defendant's first point is therefore overruled.

In view of the point relating to the refusal of the court to permit defendant to see the police report we will state additional facts relating to the descriptions of the robber given by the witnesses to the police. Mr. Lubeck testified that he told the police he was about 5′ 11″ tall, "kind of slim, and had tattoos on the back of each hand"; that he also "had a bruise, or mud, or blood, something over the left eye"; that he did not mention the color of his eyes or hair. Mr. Hooper testified that he gave the police a description that the robber was tall and thin, his hair was sandy and combed back, and he had on a brown sweater. He stated that he did not notice tattoos on the man's hands. Witness Chilton testified that he described defendant to the police as weighing about 140 pounds, 5′ 10″ tall, with a thin face. John Hursey stated that he told the police officer that the robber was a tall, thin man, fair, had on a colored jacket or sweater and had tattoos on his hands.

Two police officers who investigated the robbery testified that they took notes of the descriptions, primarily for their use in trying to apprehend the robber immediately, and that the facts were incorporated into the police report and the notes then destroyed. They each testified that the description in the police report was a composite description containing various items related by the witnesses and that it did not show the description given by each witness. Officer Hollocher stated, however, that he remembered the description given him by Mr. Lubeck which was that the man was 5′ 11″ tall, weighed about 170 pounds, was thin-built, had tattoos on the back of his hands, and had brown hair. On cross-examination he stated that the composite description given by all of the witnesses was "white male, about 25, five eleven, six foot, thin-built, brown hair, light brown hair, tattoos on his hands."

In presenting the evidence on the motion to suppress (just prior to the trial) reference was made to the police report concerning this robbery. At that time defendant's counsel made an oral motion for production of the report which was denied by the court. The defendant's theory in making the request is shown by the following: "THE COURT: What is your reason for wanting this report now, Mr. Stone? MR. STONE: Well, I think, on Brady v. Maryland [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215], I am allowed to have anything that would be favorable to my case, and I have reason to believe that the descriptions given by the victims would be

favorable to my case, as far as conducting a cross-examination of the victims and as far as seeing what they would say. THE COURT: In what sense? I don't understand. MR. STONE: Well, I think it would be favorable to see if the descriptions they gave the police and what they say on cross-examination is the same, or different, and I wouldn't know unless I see what they said to the police. * * * THE COURT: The police officers have already testified what description they have had. MR. STONE: That's all I want to do is see it in writing. I think it is favorable to my case." No further request was made for the production of the report during the trial.

Defendant, in here contending that the court erred in denying his request, continues to rely on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, which holds that the suppression by the prosecution of evidence favorable to the accused, upon request, violates due process where the evidence is material. We do not think that Brady is applicable to the situation before us. The report was requested for the sole purpose of using it in connection with the cross-examination of the robbery victims. Its use in that connection would have been informational only as it obviously would not have been admissible in evidence for the purpose of impeaching those witnesses. Moreover, there is nothing before us which indicates that the description in the report would have been favorable to defendant. Incidentally, situations calling for the application of the Brady rule will not likely occur in this state in the future as the Code of Professional Responsibility (S.Ct. Rule 4), which became effective January 1, 1971, contains the following provision: "A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."

The State correctly points out that the trial court, in denying production of the report, is supported by a long line of Missouri cases, including the following: State ex rel. Page v. Terte, 324 Mo. 925, 25 S.W.2d 459, State v. Kelton, Mo.Sup., 299 S.W.2d 493 [8, 9], State v. Crayton, Mo.Sup., 354 S.W.2d 834 [3], State v. Redding, Mo.Sup., 357 S.W.2d 103 [17], State v. Simon, Mo.Sup., 375 S.W.2d 102 [1], State v. Hale, Mo.Sup., 371 S.W.2d 249 [4], State v. Gilliam, Mo.Sup., 351 S.W.2d 723 [12], State v. Smith, Mo.Sup. 431 S.W.2d 74 [19], and State v. Aubuchon, Mo.Sup., 381 S.W.2d 807. In connection with this discussion it should be noted that none of the State's witnesses had read the police report or used it in any way in connection with their testimony. The two police witnesses had not seen it since it had been prepared.

We think it may confidently be said that Aubuchon, supra, is sound and correct in stating that "[t]he propriety of requiring the production for the defendant of documents such as prior reports and written statements of a witness in the hands of the State is, in the first instance, a matter resting largely in the discretion of the trial court. As already stated, there is no general right of discovery in criminal cases in Missouri. * * * We are unwilling to open up, carte blanche, the files of the State to a defendant. * * * We hold now that, if there is a satisfactory showing that a report or statement of a witness in the hands of the State is of such nature that *without it* the defendant's trial would be fundamentally unfair, then it should be produced * * *." 381 S.W.2d 814. The criticism recently leveled at Aubuchon is the indication therein (also appearing in many other Missouri cases) that there must be an advance showing that there is an inconsistency between the testimony of a witness and the contents of the police report before the report need be produced. Obviously, it would be difficult to make

that showing without examining the report. For reasons hereinafter stated, we have determined that we need not decide whether our cases should be overruled in the respect mentioned. We deem it advisable, however, to state that this court is now considering many changes and additions to its rules and it is likely that a rule designed to modify the requirement in question will receive due consideration.

■ We have decided that the defendant was not prejudiced by the court's action in denying his request for production of the police report and therefore it is unnecessary for us to decide whether or not the court's ruling was error. This for the reason that the nature of the material in the report relating to the description of the robber was such that it would not have been of any assistance to defendant in the cross-examination of the victims. As heretofore stated, the report did not contain any description attributable to any particular witness. It was a composite description obtained by combining each descriptive element contributed by each of the six witnesses. That description would have been of no use to defendant's counsel in trying to impeach a particular witness because it did not purport to be a description given to the police by any specific witness. Officer Hollocher, in his testimony, recited the composite description given by the witnesses and that testimony was therefore available for any use possible. Moreover, he also stated from memory the description given him by Mr. Lubeck, which disclosed a discrepancy in one respect between that and the description testimony Mr. Lubeck gave.

Under the circumstances of this case we rule that the refusal of the court to require production of the police report was not prejudicial to defendant and the second point briefed is accordingly ruled against defendant.

The judgment is affirmed.

FINCH, Acting C. J., DONNELLY and MORGAN, JJ., and WOLFE, Special Judge, concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of SEILER, J.

HENLEY, C. J., not sitting when cause was submitted.

SEILER, Judge (dissenting).

I respectfully dissent. I would do away with the rule announced in State v. Aubuchon (Mo.Sup.) 381 S.W.2d 807, which, while ostensibly recognizing the right of defendant to obtain material in the hands of the state where his trial would be fundamentally unfair otherwise, in practice effectively forecloses the defendant from exercising the right by requiring him to show an inconsistency between the police report and the testimony of the witnesses at the trial. If the defendant must first show what is in the police report is inconsistent with the testimony of the witness in question, then as a practical matter, the right of the defendant to obtain the material is destroyed, because the production of the police report is the sine qua non for the discovery of an inconsistency.[1] To insist on the requirement that the defendant first show that a document to which he has no access contains something which is posi-

---

[1]. A fallacy of the same nature was rejected by the court in Smith v. Tracy (Mo.Sup.) 372 S.W.2d 925, 938, where one party was seeking to exclude parol testimony in a fraud case on the basis that parol evidence should not be admitted until there had first been a showing of fraud. The court said "the fallacy of the argument is apparent", pointing out that it generally is necessary to admit the parol evidence to prove the fraud and that a rule requiring that fraud must be shown before parol evidence would be admissible, would, for all practical purposes, destroy the exception to the parol evidence rule which exists when fraud is alleged.

tively inconsistent with what the identifying witness is now saying in court before he can have the statement is, in effect, to leave the defendant with the right in name only, comparable to telling a starving man he has a right to eat, if he can pay for it. As stated in Jencks v. United States, 353 U.S. 657, 667, 77 S.Ct. 1007, 1013, 1 L.Ed. 2d 1103: "Requiring the accused first to show conflict between the reports and the testimony is actually to deny the accused evidence relevant and material to his defense * * *" Such an end result is not consistent with our declaration in State v. Crayton (Mo.Sup.) 354 S.W.2d 834, 838 (which also involved production of a copy of a police report) that " * * * After all, the ultimate purpose of a criminal trial is to procure substantial justice and not merely to convict the defendant."

Access to favorable information in the police report is actually part of the right to ask challenging questions by cross-examination, which is one of the fundamental rights of a defendant in any criminal trial. The constitutional guarantee of appearing and defending and meeting the witnesses face to face, Art. I, Sec. 18(a), 1945 Constitution, V.A.M.S., includes cross-examination or it would be worthless, Snyder v. Massachusetts, 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674; In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682; Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 3 L.Ed.2d 1377. As Wigmore says of cross-examination, Evidence (3rd Ed.) Vol. V, Sec. 1367, p. 29, " * * * it is beyond any doubt the greatest legal engine ever invented for the discovery of truth * * *" For the right of cross-examination to mean much in practice, it must be an opportunity of effective cross-examination, an opportunity of fully informed cross-examination. As Justice Traynor said in writing for the California court in People v. Riser, 47 Cal. 2d 566, 305 P.2d 1, 13, " * * * the state * * * has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits * * *"

The majority opinion does not reach the point of whether the court erred in refusing to produce that portion of the police report containing the description of the robber, on the ground there was no prejudice to the defendant inasmuch as the material sought would not have been of any assistance to defendant in cross-examination of the state's witnesses. However, I fail to see how we can be so certain as to the non-helpfulness of a document which we have not seen, nor was it actually seen by the trial court, for that matter. All we know about it is what the police remembered about it and they had not looked at it for months. With all due respect to the police, I do not believe we should determine the issue merely on their testimony to the effect that production of the report would not be helpful to the defendant.

The least we should do here is to require the trial court to send up the police report, so we can take a look at it before we declare that the failure to produce it was not prejudicial to defendant. In addition, I would hold that to the extent that the Aubuchon case, supra, requires that defendant must first show that the material in the police report which he seeks on identity is contradictory, that it be overruled (and the same would be true of other cases holding the same as Aubuchon [2]) and no longer followed in that respect in cases tried after publication of this opinion.

2. This would include State v. Balle (Mo. Sup.) 442 S.W.2d 35; State v. Yates (Mo.Sup.) 442 S.W.2d 21; State v. Smith (Mo.Sup.) 431 S.W.2d 74; State v. Blevins (Mo.Sup.) 421 S.W.2d 263, and Rose v. State Board (Mo.Sup.) 397 S.W. 2d 570.